NUMBER 13-01-735-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI
-EDINBURG


 


UNION GAS CORP., Appellant,


v.



EVELYN TITTIZER, ET AL., Appellees.

 


On appeal from the 267th District Court 


of Victoria County, Texas.


 


MEMORANDUM OPINION



Before Justices Hinojosa, Rodriguez and Wittig (1)



Opinion by Justice Wittig




 This memorandum opinion is the second of seven related cases. The factual
background, the standard of review, and a majority of the issues are addressed in our prior
opinion, Union Gas Corp. v. Gisler, No. 13-01-00734-CV, 2003 Tex. App. LEXIS 7581
(Corpus Christi Aug. 29, 2003, no pet. h.). In this case, Union Gas Corporation (Union)
appeals the summary judgment granted in favor of appellees, Evelyn Tittizer, Individually
and as Independent Executrix of the Estate of Louis Tittizer. Union asserts that the trial
court entered contradictory summary judgments on essentially the same though separate
contract language. It argues appellees should not have been awarded royalties accruing
before August 7, 2000, the recordation date of the unit designation. (2) We agree with Union
that the trial court erred in awarding unit royalties before August 7, 2000. Thus, we reverse
and render only the portion of the summary judgment dealing with this issue, and affirm the
balance of the trial court's judgment. We have previously addressed Union's other issues
relating to severance, interpleader, and its motion to dismiss. We adopt those holdings
from Gisler, 2003 Tex. App. LEXIS 7581, at *2, *20, *29, and overrule these issues. While
Union complained of the attorney's fee award in the Gisler case, it did not complain of the
attorney's fee award to appellees. Therefore, this issue is waived. Tex. R. App. P. 38.1(e),
(h).

I

 Union contracted with appellees and various adjoining land owners for multiple oil
and gas leases beginning in 1999. These leases contained pooling provisions allowing for
unitized production of gas in ten adjacent tracts. The designation for the pooling of the
Watts-Gisler #1 well was recorded August 7, 2000. This is the only well in the unit, and it
began production on March 27, 2000. The well is located upon land owned by Jimmie B.
Gisler, Jenell Gisler, Ralph K. Gisler, and Doris Gisler. While the Gislers became part of
the pooled unit, they claimed entitlement to 100% of the royalties from the date of first
production until the pooling designation was recorded on August 7, 2000. We agreed with
the Gislers and so held in the prior related case. Gisler, 2003 Tex. App. LEXIS 7581, at
*13.

 Union brought appellees into the initial litigation by way of a third party action and
interpleader. Appellees filed a general denial and, by their amended counterclaim, sought
a declaration that they were due royalties from March 27, 2000, and that Evelyn Tittizer
was entitled to a unit royalty of .0241152 on her 100.03-acre tract. Appellees filed a motion
for summary judgment on these issues. The motion was granted by the trial court and is
the genesis of this appeal.

 The Gislers' lease provided that the unit designation was not effective until its
recordation (August). While appellees' lease also had a provision that the lease's pooling
option was effective on the date of recordation, the unit designation itself provided that the
pooling was retroactively effective to the date of first production (March). The trial court
apparently agreed with appellees and granted their motion for summary judgment. Union
appealed. As we noted in our first opinion, appellees did not join the Gislers' claim for bad
faith pooling and other claims. The trial court severed essentially all the contract claims
of the various parties and left the tort claims of the Gislers to be adjudicated at a later date.

II

 Union filed essentially the same briefs in the seven related cases. We adopt our
ruling on Union's issues two, four, five, and six relating to the Gislers' claim to the initial
royalties, interpleader, severance, and Union's motion to dismiss. Gisler, 2003 Tex. App.
LEXIS 7581, at *2, *13, *20, *29. We now address Union's issues relating to these
appellees.

III

 Union makes the following arguments. If, as we have previously held, the pooling
is not effective until the August 7 recordation date, then there is no unit production until that
time. The same effective date should be applied to all leases. There is only one well, and,
while that well began production in March, there was no producing well in the pooled unit
until August. Thus, no royalty payments were due the appellees until August 7th. In short,
appellees were not entitled to royalties until the unit was properly pooled. Furthermore, the
court's construction of the language of the various leases must be consistent, and the
same effective pooling date should be applied to all leases. Union cites Sauder v. Frye,
613 S.W.2d 63, 64 (Tex. Civ. App.-Fort Worth 1981, no writ). Sauder held: 

We find that the provision in the Frye lease evidenced the intent of the
parties that for unitization to be effective one of its required conditions was
the recordation of the designation of pooling. Only at that point would the
unitization validly come into being under the terms of the lease. 

Id. 

 Union further argues that the unit designation language relied on by appellees was
not a contract or an offer; there was no new consideration; and the designation was just
that, a designation. The unit designation language provided in the last paragraph: "IN
WITNESS WHEREOF, this instrument is executed this 29th day of July, 2000 but effective
as of the date of first production from the Union Gas Operating Company, Watts-Gisler #1
well." This contrasts with appellees' lease provision that gave Union the right to pool. The
lease provided: "[Union] shall exercise said option as to each desired unit by executing an
instrument identifying such unit and filing it for record in the public office in which this lease
is recorded." 

 Appellees counter that Union is estopped from raising this argument on appeal
because in its third-party claim it sought to have the unit retroactively effective to the March
date of first production. They cite Samedan Oil Corp. v. Louis Dreyfus Natural Gas Corp.,
52 S.W.3d 788 (Tex. App.-Eastland 2001, pet. denied). That case held that because
Samedan had consistently asserted that a Colorado court's arbitration award was a final
judgment disposing of all claims and issues, it was estopped to later assert otherwise. Id.
at 793. 

 While appellees' argument is partially correct that Union made this assertion, they 
ignore other assertions made by Union. Specifically, Union sought a uniform determination
applicable to all royalty owners. It sought to avoid the competing claims of the Gislers,
appellees, and the other lessors in the unit. In its supplemental counterclaim and third-party interpleader claim, Union asserted it was liable for royalties due to some or all of the
other parties. It also delineated the competing claims of the Gislers and other lessors for
the first production. Specifically, Union sought relief from having to pay royalties twice and
to pay inconsistent claims. Thus, Union did not consistently plead only for retroactive
application of royalty payments, and Samedan is not controlling. See id. 

 Next appellees contend that Union was given the option to determine the effective
date and is bound by its election. They argue the lease does not limit the effective date. 
Specifically, the lease provides: 

Each of said options may be exercised by lessee at any time and from time
to time while this lease is in force, and whether before or after production has
been established either on said land, or on the portion of said land included
in the unit, or on other land unitized therewith. 

However, the pooling option was effective upon recordation. 

 Appellees also argue that no provision should be read in isolation from the rest of
the contract, citing Gibson Drilling Co. v. B & N Petroleum, Inc., 703 S.W.2d 822, 826,
(Tex. App.-Tyler 1986, writ ref'd n.r.e.). We agree. We also note that in the cited case,
the unit designation was recorded prior to production, which would have obviated this
litigation and the resultant harm to appellees. See id. at 824. We are also constrained to
construe all of the leases, Union's late recorded unit designation, and the interplay of these
instruments, which we discuss below. Appellees cite Wahlenmaier v. American Quasar
Petroleum Co., 517 S.W.2d 390, 393 (Tex. Civ. App.-El Paso 1974, writ ref'd n.r.e.), which
stated a court may not interpolate terms or provisions into a contract and thus make
contracts for the parties under the guise of interpretation. Id. Wahlenmaier further holds
where there is no ambiguity, the construction of the assignments is a question of law for
the court. Id. We agree. Here, all parties steadfastly maintain there is no ambiguity. All
pleadings and motions quarantine the arguments before us to the four corners arena. 

 Finally, appellees argue that the effective date is determined by the intent of the
parties without regard to the other leases. The lease provides a unit established shall be
valid and effective even though there may be other interests which are not effectively
pooled. Appellees cite Tiller v. Fields, 301 S.W.2d 185 (Tex. Civ. App.-Texarkana 1957,
no writ) for the proposition that unitization "agreements" are necessarily in general terms
and that appellees, "in executing the unit declaration in question intended that it be
effective as of the date of execution." Id. at 191. In other words, the intent of the parties
as expressed in the instrument controls. However, Tiller is distinguishable because there
was no requirement for recordation in the pooling agreement. Id. Further, this argument
ignores the fact that Union, under the terms of the lease, did not and could not exercise its
option to pool until recordation, August 7. Finally, this argument cannot stand if the unit
was not effectively pooled until recordation, as we discuss below.

IV

 Absent express authority, a lessee has no power to pool the lessor's interests with
the interests of others. (3) Southeastern Pipe Line Co. v. Tichacek, 997 S.W.2d 166, 170
(Tex. 1999); Browning Oil Co., Inc. v. Luecke, 38 S.W.3d 625, 640 (Tex. App.-Austin
2000, pet. denied). "For pooling to be valid, it must be done in accordance with the method
and purposes specified in the lease." Tichacek, 997 S.W.2d at 170. "The lessors' land
may be pooled only to the extent stipulated in the lease." Jones v. Killingsworth, 403
S.W.2d 325, 327 (Tex. 1965). 

 A contract is not ambiguous if it can be given a certain or definite legal meaning or
interpretation. Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587,
589 (Tex. 1996); Friendswood Dev. Co. v. McDade + Co., 926 S.W.2d 280, 282 (Tex.
1996). We should favor an interpretation that affords meaning to all parts of the contract,
so that none is without consequence. R & P Enters. v. LaGuarta, Gavrel & Kirk, 596
S.W.2d 517, 519 (Tex. 1980). 

 In Luecke, the Austin appeals court succinctly articulated rules for oil and gas
contract application of pooling clauses. Luecke, 38 S.W.3d at 640. Luecke observed:

 1. Lessee's authority to pool is derived solely from the terms of the
lease; a lessee is without such power absent express authority.

 2. Parties to an oil and gas lease must strictly comply with its terms.

 3. An oil and gas lease is a contract to be interpreted as such.

 4. In construing an unambiguous oil and gas lease, the court must
determine the intention of the parties as expressed in the lease.

 5. The writing alone expresses the intent of the parties. Thus, the court
will enforce an unambiguous lease as written.

Id. 

 From secondary sources, we also are informed that most pooling clauses now
affirmatively require the unitization declaration to be filed of record. Cummings: "Pooling
Issues-Avoiding Pitfalls," 1995 State Bar of Texas Advanced Oil, Gas & Mineral Law
Course. If the pooling clause requires recordation, it is not effective until actually filed in
the appropriate county; execution and acknowledgment is insufficient. Id. 

 Union did not pool in accordance with its lease with the Gislers, insofar as the
effective inception date is concerned. Union cannot escape its prior and material
contractual obligations to the Gislers. As Union admits, it must comply with the leases in
forming the unit. See Tichacek, 997 S.W.2d at 170. The Gislers' lease was the situs of
Watts-Gisler #1 well. The pooling rights of the parties emanated from the various leases. 
See id.; Killingsworth, 403 S.W.2d at 327-28; Luecke, 38 S.W.3d at 640. Because the unit
was not effectively pooled until the August 7 recordation date, there was no unit production
until that time. See Gisler, 2003 Tex. App. LEXIS 7581, at *10-*13. In other words,
although there was production from March 27 on the Gislers' lease, there was no
producing well in the pooled unit until August 7. We also agree with Union that the legal
construction of the various leases and unit designation should be consistent. We
accordingly apply the rationale of Sauder that the leases evidence the intent of the parties
that unitization be effective upon the recordation. See Sauder, 613 S.W.2d at 64. "Only
at that point would the unitization validly come into being under the terms of the lease." 
Id.V

 In appellees' motion for summary judgment, they also contended that Evelyn Tittizer
was entitled to a unit royalty of .0241152 on the 100.03-acre tract. Union does not dispute
the percentage of unit royalty interest, as such. It only indirectly disputed this portion of the
summary judgment in its interpleader and severance arguments. As stated, we overrule
these arguments. See Gisler, 2003 Tex. App. LEXIS 7581, at *20, *29. Union did not
appeal the award of attorney's fees in this case.

 VI

 The judgment of the trial court is affirmed in all aspects save the inception date of
appellees' rights to royalties. That portion of the judgment awarding royalties before
August 7, 2000 is reversed and rendered. The remainder of the judgment is affirmed,
including entitlement to proportional royalties beginning August 7, 2000.

 

 DON WITTIG

 Justice


Opinion delivered and filed

this 30th day of October, 2003.
1. Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of
Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).
2. The argument was in the alternative. Either the Gislers were not entitled to receive 100% of the
royalties before August 7, 2000, or the other appellees in the related cases were not entitled to their unit share
in the same time period.
3. The Texas Supreme Court notes this authority is usually found in the lease's pooling clause.
Southeastern Pipe Line Co. v. Tichacek, 997 S.W.2d 166, 170 (Tex. 1999).