Evelyn TITTIZER, Individually and as
Independent Executrix of the Estate
of Louis Tittizer, Petitioner,

v.

UNION GAS CORPORATION,
Respondent.

No. 04–0100.

Supreme Court of Texas.

Aug. 26, 2005.

Paul S. Francis, Kenneth Sup Soh, Baker & Hostetler, LLP, Joe G. Roady, Hirsch & Westheimer, Houston, for respondent.

Emmett Cole Jr., William L. Sciba, III, Cole, Cole & Easley, P.C., Victoria, for petitioner.

PER CURIAM.

The parties dispute the amount of royalties that an oil and gas lessee owes landowners under the pooling provisions of multiple oil and gas leases. The landowner argues that her lease's pooling provisions entitle her to royalties on the pooled unit from the date of first production. The lessee argues that royalties are due from the later date of recordation of the Designation of Pooled Unit. We agree with the lessee and affirm in part the judgment of the court of appeals and remand the case to the court of appeals to consider the reasonableness of attorneys' fees.

In 1999, Union Gas Corporation entered into multiple oil and gas leases with Jimmie Gisler, Jenell Gisler, Ralph Gisler, and Doris Gisler (the Gislers) and various adjoining landowners. The leases contained pooling clauses, allowing lessee Union Gas to pool acreage owned by the various lessors for production of natural gas. Under the leases, each lessor in the "pooled unit" was entitled to receive a pro rata share of royalty fees from production anywhere in the unit. Completed in March 2000, the Watts–Gisler No. 1 Well was part of a pooled unit. The well began production on March 27, 2000. However, Union Gas did not file a Designation of Pooled Unit (the Designation) until August 7, 2000. The county recorded the Designation on the same day. The Designation included language that purported to make the pooled unit effective retroactively, from the date of first production on March 27, 2000.

The Gislers filed a breach of contract claim against Union Gas, seeking to defeat the retroactive effect of the Designation. They sought 100% of their royalties from the March 27, 2000 production date until the August 7, 2000 recordation of the Designation. The suit also alleged bad-faith pooling, damages for drainage, breach of implied covenants, fraud, negligence, and conversion. Union Gas joined, as third-party defendants, the adjoining landowners (the non-drillsite lessors), alleging that these parties' royalty rights under the pooling clauses of the leases could be affected by the Gislers' claim to 100% of the royalties from March 27, 2000 to August 7, 2000. Union Gas sought a declaration to establish the rights of the parties concerning the royalty payments and the effective date of the pooled unit as the date of first production for all royalty owners.

Evelyn Tittizer was one of the non-drillsite lessors joined by Union Gas's third-party action. Tittizer counterclaimed against Union Gas seeking a declaration that the effective date of the pooled unit under her lease was the date of first production, and seeking to recover her pro rata share of royalties accruing from the date of first production to the date of judgment.

Union Gas later amended its third-party action to add a claim for interpleader, alleging that competing claims for royalties placed them "in the position of potential double liability." Union Gas tendered over $1.3 million into the registry of the court, representing this amount as the royalties accruing from March 27, 2000 (the date of first production) to August 7, 2000 (the recordation date of the Designation).

The Gislers filed a motion for partial summary judgment seeking 100% of their royalties from March 27, 2000 to August 7, 2000. All of the non-drillsite lessors, in-

cluding Tittizer, also filed motions for partial summary judgment, seeking declarations that the pooling clauses of the leases were effective from the date of first production and that all of the owners of the pooled unit were entitled to pro rata shares of the $1.3 million in royalties from production during the March 27, 2000 to August 7, 2000 period.

The trial court granted the Gislers' and all non-drillsite lessors' motions for partial summary judgment against Union Gas. The trial court also granted motions to sever the Gislers' breach of contract claims and the non-drillsite lessors' counterclaims against Union Gas, creating eleven different cases. The trial court entered final judgment for the Gislers on their severed contract claims for over $1.3 million in royalties, plus attorneys' fees. The trial court also entered judgment for each of the non-drillsite lessors. Specifically, the trial court awarded Tittizer her pro rata share of royalties from March 27, 2000, the date of first production, through April 30, 2001, the date of judgment in her favor, plus attorneys' fees. By doing so, the trial court implicitly rejected Union Gas's interpleader claim.

■ On appeal, Union Gas complained that it had been wrongfully ordered to pay double royalties for production between March 27, 2000 and August 7, 2000. The court of appeals reversed in part the trial court's judgments in favor of the non-drillsite lessors and ordered that the Gislers alone were entitled to royalties from production between March 27, 2000 and August 7, 2000. 171 S.W.3d 209, ——, 2003 WL 22479980. The court of appeals affirmed the trial court's judgment in all other respects. *Id.* at ——. The court of appeals also held that Union Gas failed to attack the award of Tittizer's attorneys' fees and thus did not consider the reasonableness of the $150,000 award. Tittizer

and Union Gas petitioned this Court for review. We review the trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003).

■ An oil and gas lease is a contract, and its terms are interpreted as such. *See Anadarko Petroleum Corp. v. Thompson,* 94 S.W.3d 550, 554 (Tex.2002); *Skelly Oil Co. v. Archer,* 163 Tex. 336, 356 S.W.2d 774, 778 (1961). In construing an unambiguous oil and gas lease, such as the one at issue here, we seek to enforce the intention of the parties as it is expressed in the lease. *Heritage Res., Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996); *McMahon v. Christmann,* 157 Tex. 403, 303 S.W.2d 341, 344 (1957). We enforce an unambiguous document as written. *Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 728 (Tex.1981).

■ A lessee has no power to pool without the lessor's express authorization, usually contained in the lease's pooling clause. *Southeastern Pipe Line Co. v. Tichacek,* 997 S.W.2d 166, 170 (Tex.1999); *Jones v. Killingsworth,* 403 S.W.2d 325, 327–28 (Tex.1965) ("The lessors' land may be pooled only to the extent stipulated in the lease."). For pooling to be valid, it must be done in accordance with the method and purposes specified in the lease. *Tichacek,* 997 S.W.2d at 170.

Union Gas's lease with Tittizer reads:

Lessee shall exercise said option as to each desired unit by executing an instrument identifying such unit and filing it for record in the public office in which this lease is recorded. Each of said options may be exercised by lessee at any time and from time to time while this lease is in force, and whether before or after production has been established either on said land, or on the portion of

said land included in the unit, or on other land unitized therewith.

Tittizer argues that the language in her lease allows Union Gas to make the effective date of the pooled unit retroactive by language in the Designation. On the contrary, under the terms of the lease, pooling can only be effectuated upon recordation of an instrument identifying the pooled unit. While the lease allows Union Gas to pool by recording at any time, it does not allow Union Gas to pool on a date other than that of recordation of the Designation. Therefore, the attempt by Union Gas to effect pooling on a date prior to the date of recordation, by assigning a different effective date in the Designation, is contrary to the unambiguous terms of the lease. Our courts of appeals have also reached the same conclusion on similar lease language. *See, e.g., Sauder v. Frye,* 613 S.W.2d 63, 64 (Tex.Civ.App.Fort Worth 1981, no writ) (holding, in interpreting a pooling clause providing that the lessee "shall execute in writing and record" an instrument identifying the units, that the intent of the parties was for unitization to be effective only upon recording of the designation); *Yelderman v. McCarthy,* 474 S.W.2d 781, 782, 784 (Tex.Civ. App., Houston [1st Dist.] 1971, writ ref'd n.r.e.) (holding that ratification of a lease clause providing that "upon such recordation the unit shall be effective as to all parties hereto" made pooling conditioned upon recordation); *cf. Tiller v. Fields,* 301 S.W.2d 185, 191 (Tex.Civ.App.Texarkana 1957, no writ) (holding that effective date of pooling was the date of execution of the designation where the lease did not require that the unit designation be recorded); *see also* Howard R. Williams & Charles J. Meyers, Oil and Gas Law §§ 669.11, 921.16 (2004); 1 Ernest E. Smith & Jacqueline Lang Weaver, Texas Law of Oil and Gas § 4.8[B][2] (2d ed.2005).

We hold that this lease does not authorize the lessee to execute a pooling designation with a retroactive effect. The lease provides that unitization can be effective only upon recordation. We affirm the court of appeals' conclusion that the effective date of the pooled unit was the date of recordation of the Designation, and that Tittizer is only entitled to her pro rata share of the royalties earned after that date.

■■■ Tittizer next argues that Union Gas is estopped from arguing that the effective date of the pooled unit is the date of recordation because Union Gas filed a third-party claim seeking a declaration that the pooled unit was effective as of the date of first production, on March 27, 2000. As a general rule, the doctrine of estoppel precludes a litigant from requesting a ruling from a court and then complaining that the court committed error in giving it to him. *Northeast Tex. Motor Lines v. Hodges,* 138 Tex. 280, 158 S.W.2d 487, 488 (1942); *Ramirez v. State,* 973 S.W.2d 388, 392 (Tex.App.El Paso 1998, no pet.); *Austin Transp. Study Policy Advisory Comm. v. Sierra Club,* 843 S.W.2d 683, 689–90 (Tex.App.Austin 1992, writ denied). The rule is grounded in justice and dictated by common sense. *Hodges,* 158 S.W.2d at 488. Union Gas responds that it is not raising a point of error inconsistent with its position at the trial court. We agree.

Union Gas filed its third-party claim to avoid potential double liability by obtaining a judicial determination of its obligations under the leases, and also by joining all the stakeholders as parties to ensure that it obtained a binding determination of their contractual rights and obligations in the oil and gas properties. While Union Gas did seek a declaration that the effective date of the pooled unit for royalty purposes was the date of first production,

it also stated that "the possibility of double liability makes it essential that Union Gas obtain a declaration of the rights of the parties." Union Gas's argument that it had the power to make the unit retroactive was contingent on the retroactive application being uniformly applied to all parties, such that it owed no more than the amount it sought to interplead into the court's registry.

■ As we explained in *Hodges,* a party cannot complain on appeal that the trial court took a specific action that the complaining party requested, a doctrine commonly referred to as "the invited error" doctrine. 158 S.W.2d at 488; *see, e.g., Naguib v. Naguib,* 137 S.W.3d 367, 375 (Tex.App., Dallas 2004, pet. denied); *Neasbitt v. Warren,* 22 S.W.3d 107, 112 (Tex. App.Fort Worth 2000, no pet.); *Ramirez,* 973 S.W.2d at 392. Union Gas sought a uniform determination from the trial court, applicable to all royalty owners, that the effective date of pooling was the date of first production. Granting Tittizer's motion for summary judgment, the trial court declared that the effective date of the pooled unit as to the Tittizer lease was the date of first production. However, the court did not apply the same effective date to the Gisler lease. Instead, contrary to Union Gas's position, the court entered judgment in favor of the Gislers in an amount based on an effective date of pooling from the date of recordation of the Designation. By establishing different effective dates for the Gislers and Tittizer, the trial court did not grant Union Gas's requested uniform relief. Therefore, the invited error doctrine is inapplicable to this case because Union Gas did not request that the trial court rule in the manner in which it did and thus did not "invite" the error.

■ In addition, to be estopped from asserting that recordation is the effective date of pooling, Union Gas must have unequivocally taken a position in the trial court that is clearly adverse to its position on appeal. *See Am. Sav. & Loan Ass'n v. Musick,* 531 S.W.2d 581, 589 (Tex.1975) ("One of the requirements for application of the doctrine of judicial estoppel is that the statement must be deliberate, clear, and unequivocal."). Union Gas's position at the trial court was neither unequivocal nor clearly adverse to its position on appeal. Union Gas stated in its third-party claim that a "bona fide dispute exists" concerning the entitlement of Tittizer and the non-drillsite lessors "under their respective leases and under the Unit Designation." This statement is an acknowledgment that both positions concerning the effective date of pooling may have validity and are asserted in good faith. Union Gas's position that the effective date of pooling was the date of first production was not unequivocal. For similar reasons, Union Gas's third-party claim is not clearly adverse to its position on appeal. At the trial court, Union Gas sought to obtain a uniform determination applicable to all royalty owners to avoid double liability, and its position on appeal is the same.

■ Finally, Union Gas complains that the court of appeals erred in holding that Union Gas did not appeal the award of $150,000 in attorneys' fees to Tittizer. We agree. In its brief to the court of appeals, Union Gas included the following point of error: "The trial court erred in granting final judgments which awarded attorneys fees to the Gislers [*Union Gas Corp. v. Gisler,* 129 S.W.3d 145 (Tex.App.—Corpus Chrisit)] because the amounts awarded were excessive and were not reasonable, necessary, equitable, or just." (emphasis added). The court of appeals held simply that "Union did not appeal the award of attorneys fees in this case." 171 S.W.3d at 211 [(Tex.App.—Corpus Christi—2003)].

Read in isolation, Union Gas's point of error in the court of appeals complains that the trial court awarded excessive fees to the *Gislers* and includes no challenges to the trial court's attorneys' fees award to *Tittizer.* Under this view Union Gas failed to preserve error as to Tittizer's attorneys' fees award. However, points of error should be liberally construed to fairly and equitably adjudicate the rights of litigants. Tex.R.App. P. 38.9; *Williams v. Khalaf,* 802 S.W.2d 651, 658 (Tex.1990). Furthermore, an appellate court should consider the parties' arguments supporting each point of error and not merely the wording of the points. *Anderson v. Gilbert,* 897 S.W.2d 783, 784 (Tex.1995); *Holley v. Watts,* 629 S.W.2d 694, 696 (Tex.1982). After severing all the non-drillsite lessors' counterclaims, the trial court awarded attorneys' fees to both Tittizer and the Gislers. The body of the argument supporting the point of error twice refers to challenges to the attorneys' fees awarded to Tittizer. The text of Union Gas's argument concludes that "the attorneys fee award provided to the Tittizer appellees is thus unreasonable as a matter of law."

The context of the litigation, as well as the text of the argument in its brief to the court of appeals, indicates that the intent of Union Gas was to appeal the award of attorneys' fees to Tittizer, even though its point of error erroneously mentioned "the Gislers." Adhering to tenets of preservation is important; however, appellate courts should avoid being overly technical in their application. *See In re B.L.D. & B.R.D.,* 113 S.W.3d 340, 350 (Tex.2003) (describing the underpinnings of preservation rules as fairness to the parties and judicial economy and accuracy); *Motor Vehicle Bd. of the Tex. Dep't of Transp. v. El Paso Indep. Auto. Dealers Ass'n,* 1 S.W.3d 108, 111 (Tex.1999) (stat-

ing the Court's preference to decide cases on substance rather than procedural technicalities). The court of appeals erred in holding that this point of error was not raised. We remand this issue to the court of appeals. Tex.R.App. P. 61.4.

We hold that the court of appeals is correct in concluding that Tittizer is not entitled to royalties for production between March 27, 2000 and August 7, 2000 because the lease unambiguously provides for pooling to commence on the date of the Designation's recordation. We further hold that the court of appeals erred in concluding that Union Gas failed to appeal the trial court's award of attorneys' fees. We affirm in part and reverse in part the court of appeals' judgment and remand the case to the court of appeals to consider Union Gas's challenge to the reasonableness of the attorneys' fees awarded to Tittizer.

Justice Willett did not participate in the decision.