**Opinion issued July 16, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————————

## NO. 01-12-00087-CV

————————————————

## IN RE ESTATE OF FRANK H. GALIK, DECEASED

On Appeal from the 82nd District Court
Falls County, Texas
Trial Court Case No. 36,727

## MEMORANDUM OPINION

In this probate proceeding, appellants, Hazel Galik Dutka and Gerald Galik, the independent executors of the estate of Frank Galik ("the executors"), and appellee, Clifton Galik, entered into a Rule 11 agreement ("the Settlement Agreement") concerning the sale of estate property. After the property at issue

was sold, the trial court disbursed the proceeds of the sale to the executors and to Clifton. In two issues, the executors contend that the trial court erroneously (1) refused to follow the Settlement Agreement and (2) awarded attorney's fees to Clifton's attorney in the disbursement order.

We affirm.

## Background

Frank Galik died in 1996. He was survived by his wife, Christine, and seven children, including Hazel, Gerald, Clifton, and Lawrence. The trial court admitted his will to probate on June 11, 1996, and Hazel and Gerald qualified as independent executors of his estate ("the Estate"). The property at issue in this case was Frank and Christine's homestead, located on five acres in Falls County.[1] Before she died, during the pendency of the administration of the Estate, Christine transferred her one-half interest in the property to her sons Clifton and Lawrence Galik. Lawrence later transferred his interest in the property to Clifton before he died, also during the pendency of the administration of the Estate. Thus, Clifton and the Estate each owned a one-half interest in the property.

---

[1] The Texas Supreme Court transferred this appeal from the Court of Appeals for the Tenth District of Texas to this Court pursuant to its docket-equalization powers. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2013) ("The supreme court may order cases transferred from one court of appeals to another at any time that, in the opinion of the supreme court, there is good cause for the transfer.").

2

In February 2009, the executors, on behalf of the Estate, sued Christine and Clifton, seeking declarations that the property was Frank's separate property, that, under Frank's will, Christine had only a life estate in the property, and that, therefore, the Estate was the sole owner of the property.[2]

The Estate, Christine, Clifton, and Lawrence entered into the Settlement Agreement in October 2009. In this agreement, the parties agreed that the property was community property and, thus, Christine had owned a one-half interest in the property when she transferred her interest to Clifton and Lawrence. The executors agreed to release $10,000 from an escrow account to Clifton. Clifton and Lawrence agreed that one or both of them would purchase the Estate's one-half interest in the property. The price for the Estate's interest would be determined by the "average price arrived at by three agreed upon appraisers." The Estate and Clifton would each choose an appraiser, and these appraisers would jointly select a third appraiser. The Settlement Agreement also contained a mutual release and a provision concerning attorney's fees. The attorney's fees provision stated, "In the event that any action or proceeding is brought to interpret or enforce any of the terms and conditions of this Agreement, the prevailing Party shall be entitled to have and recover from the other Party all costs and reasonable attorneys' fees

---

[2] The executors do not contend on appeal that the Estate was the sole owner of the property or that Clifton had no interest in the property. The executors accept that the property was Frank and Christine's community property; their argument is that the trial court improperly disbursed the proceeds from the sale of the property.

3

incurred in connection therewith." After executing this agreement, the parties filed an agreed motion to release $10,000 from the registry of the court to Clifton, which the trial court granted.

In March 2010, Clifton and Lawrence moved to sell the property. In this motion, Clifton and Lawrence acknowledged that, pursuant to the Settlement Agreement, they were required to purchase the Estate's one-half interest in the property. They alleged, however, that "the procedure contemplated by the settlement agreement for establishing the purchase price of the Estate's one-half (1/2) interest—*i.e.* naming various appraisers and establishing the parameters whereby the appraiser's evaluation of value was to be determined—has proven unworkable." Clifton and Lawrence requested that the trial court declare that the property was incapable of division and require the property to be sold at fair market value, with one half of the proceeds going to the Estate and the other half going to Clifton and Lawrence. In effect, they moved to set aside the Settlement Agreement.

In response, the executors argued that Clifton and Lawrence had breached the Settlement Agreement.[3] The parties obtained two of the required appraisals— the appraiser selected by the executors (White) valued the property at $184,000 and the appraiser selected by Clifton and Lawrence (Johnson) valued the property

---

[3] The executors did not file a separate action or an amended petition asserting a cause of action for breach of the Settlement Agreement.

at $151,450—but Clifton and Lawrence stated, before the third appraisal could be conducted, that they would not purchase the property. The executors attached a letter that Clifton and Lawrence's counsel had sent to the appraisers, which stated:

> I received a copy of the letter from Mr. Johnson dated December 22, 2009, and would like for you to hold off incurring the cost of a third appraiser until such time as Mr. White's appraisal can be based on Falls County values instead of Robertson County. As you are aware, all three of Mr. White's comparable sales are based on Robertson County which is a substantially better market than Falls County concerning the property in question. By a copy of this letter I am confirming that Mr. White should be more realistic in his appraisal and that we are opposed to the selection of a third appraisal at this time until he complies with the market values for Falls County.

The executors stated that if the property were sold at full market value for Falls County and the proceeds were "less than contemplated under the terms of the Settlement Agreement," they intended to file suit against Clifton and Lawrence to recover the difference. The executors also stated that if the trial court determined that the property should be sold at fair market value, Hazel, not Clifton, should be granted the authority to handle the sale of the property.

The trial court held a hearing on Clifton's motion to sell on May 4, 2010. At this hearing, the executors' attorney repeatedly stated that the Settlement Agreement was "out the window" after Clifton's counsel had sent the letter to the appraisers, and he argued that the trial court should order the sale of the property to a third party. He stated, "We need to let the executors of the estate just simply list the house," and he argued that once the property sold, the trial court could

5

determine how to divide the proceeds. The executors reiterated their argument that if the court determined that the property should be sold at fair market value, Hazel should be granted the authority to handle the sale.

On May 25, 2010, the trial court signed an order granting Clifton and Lawrence's motion as amended at the hearing. The court ordered the sale of the property to a third party at fair market value, but it ordered Hazel to list the property for sale. The court further ordered that all proceeds were to be held by the title company and that the "contract, sales price, and funds of the sale be presented to the Court for disbursement after hearing evidence for attorney's fees and insurance costs and expenses are heard." The executors' proposed order stated that the trial court held a status hearing on Clifton and Lawrence's motion "because [Clifton and Lawrence] had not complied with the settlement agreement by 1) naming a third appraiser [and] 2) by purchasing the property from the Estate as required," but the trial court marked through this language in the signed version of the order. Thus, the trial court did not find that Clifton and Lawrence had breached the Settlement Agreement. Instead, the court's order set aside the Settlement Agreement and settled the dispute with respect to the procedure for determining the fair market value of the property without finding breach on anyone's part. Both the Estate and Clifton accepted this resolution, and the property was listed for sale by Hazel through a real estate broker.

6

The Estate ultimately sold the property for $140,000. The court ordered that, after the commissions and other closing costs were paid, the remaining proceeds were to be deposited into the registry of the court. A total of $124,800.69 was deposited into the registry of the court.

The trial court then held a hearing and entered a disbursement order concerning the proceeds from this sale. The order stated:

> From the funds remaining in the registry of the Court, the following will be approved and deducted from the total proceeds:
>
> 1.  To Gerald Galik and Hazel Galik Dutka, Individually and as Co-Executors of the Estate of Frank Galik, the sum of $2,722.00 for insurance and the sum of $5,000.00 for cleanup and maintenance expenses.
>
> 2.  To Clifton Galik, the sum of $1,651.00 for taxes and $750.00 for ½ of the rental income.
>
> 3.  To [the executors' attorney], for reasonable and necessary legal fees, the sum of $15,000.00
>
> 4.  To [Clifton's attorney], for reasonable and necessary legal fees, the sum of $15,000.00.
>
> 5.  The remaining funds will be equally divided between the parties.
>
> Hence, the District Clerk will be directed, upon finality of this order, to issue disbursement checks as follows, less the $50.00 District Clerk Administrative fee:
>
> 1.  To Gerald Galik and Hazel Galik Dutka, individually and as Co-Executors of the Estate of Frank Galik, the sum of $50,035.84.
>
> 2.  To Clifton Galik, the sum of $44,714.85.
>
> 3.  To [the executors' attorney], the sum of $15,000.00

7

4. To [Clifton's attorney], the sum of $15,000.00.

The executors moved for a new trial, arguing that the trial court's disbursement order did not follow the binding Settlement Agreement. Specifically, they argued that Clifton's attorney was not entitled to attorney's fees and that the trial court should not have divided the proceeds equally between the parties. The executors also argued that the trial court failed to award the full amount of cleanup and maintenance fees that they had incurred, that the court should have awarded their attorney's fees from Clifton's share of the proceeds rather than from the proceeds as a whole, and that the court should have awarded them the $14,620.81 that was paid for closing costs and expenses out of Clifton's share of the proceeds.

The trial court denied the executors' motion for new trial, and this appeal followed.

**Failure to Follow Settlement Agreement**

In their first issue, the executors contend that the trial court erred in refusing to follow the Settlement Agreement and that the proper disposition of this appeal is to remand the case to the trial court "with directions that it strictly follow the Agreement."

Texas Rule of Civil Procedure 11 states, "Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the

8

record, or unless it be made in open court and entered of record." TEX. R. CIV. P. 11. A trial court's judgment rendered on a Rule 11 agreement must be in "strict or literal compliance" with the terms of the agreement, and the court cannot remove or add material terms. *Baylor Coll. of Med. v. Camberg*, 247 S.W.3d 342, 346 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing *Chisholm v. Chisholm*, 209 S.W.3d 96, 98 (Tex. 2006) (per curiam)). Consent to the agreement must exist both at the time the agreement is reached and at the time an agreed judgment is rendered. *Id.* (citing *Chisholm*, 209 S.W.3d at 98). The trial court may enforce a written settlement agreement even after one party withdraws consent to the agreement before judgment is rendered on the agreement, but the court may not render judgment on the settlement agreement. *Staley v. Herblin*, 188 S.W.3d 334, 336 (Tex. App.—Dallas 2006, pet. denied). Instead, the court may only enforce the agreement as a written contract. *Id.* Thus, the party seeking enforcement of the agreement must pursue a separate breach of contract claim that is subject to the normal rules of pleading and proof. *Id.* As the Dallas Court of Appeals stated in *Staley*,

> A claim to enforce a disputed settlement agreement should be raised through an amended pleading or counterclaim asserting breach of contract. To allow enforcement of a disputed settlement agreement simply on motion and hearing would deprive a party of the right to be confronted by appropriate pleadings, assert defenses, conduct discovery and submit contested fact issues to a judge or jury.

*Id.* at 336–37.

9

On appeal, the executors contend that Clifton breached the Settlement Agreement when his attorney sent a letter to the two appraisers instructing them not to select a third appraiser and then moved for sale of the property to a third party.[4] They also contend that the trial court erred by not following the Settlement Agreement in distributing the proceeds after the eventual sale of the property. The executors, however, ignore the fact that by the time the trial court was asked to rule on Clifton's motion to sell the property, the executors themselves no longer agreed to enforcement of the Settlement Agreement according to its original terms, but they instead agreed that the property should be sold to a third party and that Hazel should handle the sale. The executors are therefore estopped from arguing to the contrary on appeal. *See In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 646 (Tex. 2009) ("For a party to be estopped from asserting a position in an appellate court based on actions it took in the trial court, the party must have 'unequivocally taken a position in the trial court that is clearly adverse to its position on appeal.'") (quoting *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 862 (Tex. 2005) (per curiam)).

To the extent the executors argue on appeal that the trial court erred in how it actually distributed the proceeds, we note that the executors have presented no authority that the trial court's actions in dividing the proceeds of the sale were

---

[4] The executors do not contend on appeal that the trial court erred in failing to find that Clifton breached the Settlement Agreement.

10

improper. Indeed, these procedures specifically followed those set out in the trial court's order following the hearing setting aside the Settlement Agreement. In distributing the proceeds, the trial court began with the amount placed in the registry of the court: $124,800.69, which reflected the purchase price minus the closing costs. The court then subtracted reimbursable expenses of $2,722 for insurance on the property, $5,000 for maintenance expenses, $1,651 for taxes, $750 for rental income, and a $50 administrative fee. The trial court deducted a total of $30,000 for attorney's fees and allocated $15,000 to each party's attorney. The remaining proceeds were divided equally between the Estate and Clifton, and the court reimbursed each party for the reimbursable expenses that they had paid. Thus, the executors were reimbursed for insurance and maintenance costs, and Clifton was reimbursed for taxes and rental income pursuant to the court's order. The executors have presented no authority that the proceeds should have been divided in a different manner, namely, that the closing costs should have been subtracted from Clifton's share and added to the executors' share.

The executors cite section 347 of the Restatement of Contracts, in addition to law providing that a party may recover reasonable attorney's fees in a breach of contract action, for the proposition that the Estate "was entitled to any damages that accrued as a result of [Clifton's] breach of the Agreement" and that these amounts should be deducted from Clifton's share of the proceeds. *See*

11

RESTATEMENT (SECOND) OF CONTRACTS § 347 (1981); TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (Vernon 2008); *Gunter v. Bailey*, 808 S.W.2d 163, 166 (Tex. App.—El Paso 1991, no writ).  However, as we have noted, no such action was actually brought—the only proceeding was on Clifton's motion to sell the property to a third party, i.e., to set aside the Settlement Agreement.  And the trial court did not make a finding that Clifton breached the Settlement Agreement.  Rather, the trial court granted Clifton's motion to sell in part while ordering that the sale be handled by Hazel, one of the executors.  The executors do not argue on appeal that the trial court erred in ordering that Hazel list the property for sale, and they do not argue that the trial court erred in failing to find that Clifton breached the Settlement Agreement.  The executors have therefore waived the right to enforce the disputed Settlement Agreement.  *See Staley*, 188 S.W.3d at 336–37 (holding that, after consent to settlement agreement is withdrawn, court may enforce agreement only as written contract and that party seeking enforcement must pursue claim of breach in separate claim, "subject to the normal rules of pleading and proof").

We conclude that the executors have not demonstrated that the trial court abused its discretion in its manner of dividing the proceeds received from the sale of the property.

We overrule the executors' first issue.

**Attorney's Fees**

In their second issue, the executors contend that the trial court erred in awarding attorney's fees to Clifton's attorney because Clifton could not be the prevailing party under the Settlement Agreement and the trial court had no statutory basis for awarding attorney's fees to him.

The executors are correct in pointing out that an attorney's fees award may be recovered only if specifically provided for by statute or by contract. *See MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 669 (Tex. 2009). That rule applies, however, to situations in which one party is required to pay the attorney's fees of another party. *See Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 95 (Tex. 1999) (per curiam) ("We have consistently held that a prevailing party cannot recover attorney's fees *from an opposing party* unless permitted by statute or by contract between the parties.") (emphasis added); *BASF Fina Petrochemicals Ltd. P'ship v. H.B. Zachry Co.*, 168 S.W.3d 867, 872 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (stating same). In those situations, the "losing" party may be required to pay the prevailing party's attorney's fees as part of the damages award only if there is statutory or contractual authority for the fee award.

Here, the trial court did not, in fact, require the executors to pay Clifton's attorney's fees. Instead, after the trial court deducted the amount of reimbursable expenses to which the executors and Clifton were entitled, it deducted $15,000 for

the executors' attorney and $15,000 for Clifton's attorney and ordered that these amounts were to be paid directly to the attorneys. The executors and Clifton were therefore essentially required to pay their own attorney's fees. If the trial court had not allocated $30,000 for attorney's fees, that amount would be included in the amount the trial court divided equally between the Estate and Clifton, and both the Estate and Clifton would have been awarded $15,000 more than they actually received in the disbursement.

Because this is not a situation in which the trial court ordered the executors to pay Clifton's attorney's fees, the rule set out in *Holland*, that a prevailing party cannot recover attorney's fees from the opposing party unless permitted by statute or contract, is inapplicable. *See Holland*, 1 S.W.3d at 95. Under these factual circumstances, the trial court did not err in allocating $15,000 to be payable to Clifton's attorney.

We overrule the executors' second issue.

## Conclusion

We affirm the judgment of the trial court. All pending motions are dismissed as moot.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

15