Opinion filed October 25, 2018



# In The

# Eleventh Court of Appeals

_____

## No. 11-17-00028-CV

_____

## ENDEAVOR ENERGY RESOURCES, L.P., Appellant

## V.

## ENERGEN RESOURCES CORPORATION AND JOHN THOMAS QUINN, Appellees

**On Appeal from the 118th District Court**
**Howard County, Texas**
**Trial Court Cause No. 50827**

## O P I N I O N

This appeal from a summary judgment involves a construction of a continuous-development clause in an oil and gas lease. The continuous-development clause contained a provision for a "one hundred fifty (150) day continuous development program." This appeal focuses on the manner in which days are calculated for the program. Specifically, we must interpret a provision that

permits "unused" days to extend a subsequent term under the program. The trial court adopted Appellees' construction of the provision. We affirm.

*Background Facts*

Appellant, Endeavor Energy Resources, L.P., is the successor in interest of the leasehold estate in an oil and gas lease dated July 21, 2006, that Appellee John Thomas Quinn executed in favor of OGX Resources LLC. The lease covers approximately 11,302.98 acres of land in Howard County. The habendum clause of the lease established a three-year primary term and a secondary term "as long thereafter as oil and gas, or either of them[,] is produced in paying quantities from the lands hereby leased"—subject to certain provisions, obligations, and limitations within the lease.[1] One such provision is a continuous-development clause set out in Paragraph 16 of the lease. This clause permitted Endeavor to retain its leasehold interest after the primary term to all of the acreage covered by the lease provided that Endeavor maintained a continuous-development program. Failure to adhere to the mandated schedule would cause the lease to terminate as to all acreage not contained within a proration unit for each producing well under the lease's retained-acreage clause.

Endeavor did not drill any wells prior to the expiration of the primary term on July 21, 2009. Afterwards, Endeavor began drilling wells on the lease. Endeavor spudded its first well, the "Quinn 8A #1 Well," 145 days after the primary term expired. During the next five years, Endeavor drilled eleven additional wells. There is no dispute that these twelve wells complied with the timing requirements of the

---

[1]Typically, an oil and gas lease is kept alive after its primary term only by production in paying quantities or a savings clause. *See Krabbe v. Anadarko Petroleum Corp.*, 46 S.W.3d 308, 315 (Tex. App.—Amarillo 2001, pet. denied). If the lease's primary term expires when there is nonproduction and there is no savings clause or the lessee fails to comply with any savings clause in the lease, the lease and the lessee's determinable fee interest automatically terminate. *See id.*

2

lease's continuous-development clause. Endeavor completed the twelfth well on December 27, 2014. Endeavor did not drill another well within the next 300 days.

On the 311th day after the completion of the twelfth well (November 2, 2015), Quinn executed a lease in favor of Appellee Energen Resources Corporation. Energen filed the underlying action against Endeavor on November 4, 2015, alleging that the continuous-development program in the previous lease had lapsed.[2] Energen asserted that the lease automatically terminated to all "non-dedicated acreage." Thereafter, Endeavor spudded the thirteenth well on November 12, 2015, drilling it to completion on December 9, 2015. Endeavor asserted that this well was timely drilled because Endeavor had accumulated 227 unused days under the continuous-development program that permitted it to wait 377 days to commence operations on the thirteenth well.

The parties filed competing traditional motions for partial summary judgment seeking the trial court's interpretation of a provision in the continuous-development clause that permitted Endeavor to accumulate unused days. The specific provision reads as follows: "Lessee shall have the right to accumulate unused days in any 150-day term during the continuous development program in order to extend the next allowed 150-day term between the completion of one well and the drilling of a subsequent well." Under Endeavor's interpretation, the number of days that it drilled sooner than 150 days for each of the first twelve wells accumulated like "pennies in a jar" for it to use on subsequent wells. Under this contention, Endeavor asserted that it had accumulated 227 days from the first twelve wells that extended the deadline for the thirteenth well to 377 days (150 days + 227 accumulated unused days). Conversely, Energen asserted that unused days accumulated from one well could only be used to extend the 150-day deadline for drilling the next well. Under

---

[2]Quinn intervened in the trial court and aligned himself with Energen. Quinn adopted Energen's pleadings at trial, and he has adopted Energen's brief on appeal.

Energen's construction, the thirteenth well had to be spudded 186 days after the twelfth well (July 1, 2015) because Endeavor only earned an additional thirty-six days from the twelfth well because it was completed 114 days after the eleventh well. The trial court agreed with Energen's construction of the lease, granted Energen's motion for partial summary judgment, and denied Endeavor's motion. Energen subsequently filed a supplemental petition asserting supplemental causes of action for declaratory judgment, trespass, and conversion.

After the trial court resolved the lease interpretation issue by partial summary judgment, the parties made stipulations concerning the claims that remained pending. In its final judgment, the trial court incorporated the partial summary judgment in favor of Energen. The trial court held that Endeavor's lease terminated to all non-dedicated acreage and depths on July 1, 2015, and that Endeavor's lease terminated to all land not included within a producing proration unit. The trial court quieted title in favor of Energen and Quinn for this acreage. The trial court also found that Endeavor committed a good-faith trespass on Energen's leasehold mineral estate with respect to the drilling of the thirteenth well, the "Quinn 34 No. 1 Well."

*Analysis*

Endeavor asserts two issues on appeal. In its first issue, Endeavor challenges the trial court's grant of Energen's motion for partial summary judgment and the denial of Endeavor's motion for partial summary judgment on the lease construction issue. In its second issue, Endeavor challenges the trial court's final judgment denying all relief requested based on the trial court's interpretation of the lease in the partial summary judgment order. The resolution of both issues depends upon the interpretation of the continuous-development provision.

In this case, both parties moved for a partial summary judgment on traditional grounds, seeking the trial court's interpretation of the continuous-development

4

provision. We review summary judgments de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Summary judgment is proper when no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). When the parties file competing summary judgment motions and the trial court grants one and denies the other, "we consider the summary judgment evidence presented by both sides, determine all questions presented, and if the trial court erred, render the judgment the trial court should have rendered." *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 583 (Tex. 2015).

"An oil and gas lease is a contract, and its terms are interpreted as such." *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 860 (Tex. 2005). We review and construe mineral leases de novo, and our objective in doing so is to ascertain the parties' intent as expressed within the lease's four corners. *Endeavor Energy Res., L.P. v. Discovery Operating, Inc.*, 554 S.W.3d 586, 595 (Tex. 2018) (citing *Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 554 (Tex. 2002)). In construing an oil and gas lease, we seek to enforce the intention of the parties as expressed in the lease. *Tittizer*, 171 S.W.3d at 860. "As with contracts generally, the parties are free to decide their contract's terms, and the law's 'strong public policy favoring freedom of contract' compels courts to 'respect and enforce' the terms on which the parties have agreed." *Endeavor*, 554 S.W.3d at 595 (quoting *Phila. Indem. Ins. Co. v. White*, 490 S.W.3d 468, 471 (Tex. 2016)).

The continuous-development provision was contained in the following portion of the lease:

16. Notwithstanding any provisions herein to the contrary, the following provisions, obligations, and limitations shall control:

(a) "Proration Unit" as used herein means the smallest acreage proration unit allowable for a producing well under the proration rules and regulations of the Railroad Commission of Texas for the well situated

thereon to obtain the maximum allowable production which such well is consistently able to produce. The proration unit shall be in the form of a square if it contains forty (40) or one hundred sixty (160) acres with the well located as near the center as reasonably practical or in the form of a rectangle in which the longest sides are not greater than twice the length of the shortest side if the proration unit contains eighty (80) or three hundred twenty (320) acres with the well being located in as near the center of the rectangle as reasonably practical.

(b) "Non-dedicated acreage" means any acreage not included in a proration unit upon which is situated a producing well.

(c) If this lease is extended as to non-dedicated acreage beyond the expiration of the primary term hereof, this lease shall terminate as to non-dedicated acreage one hundred fifty (150) days after the expiration of the primary term unless during such one hundred fifty (150) day period Lessee has commenced operations for the drilling of a well in which case this lease shall be extended as to the dedicated and non-dedicated acreage so long as operations for the drilling of a subsequent well are commenced within one hundred fifty (150) days after the completion of the preceding well. This lease shall terminate as to all non-dedicated acreage any time a subsequent well is not commenced within one hundred fifty (150) days from the completion of a preceding well. Each well herein provided to be drilled, once spudded, shall thereafter be drilled with reasonable and continuous diligence to a depth below three thousand five hundred one feet (3,501') below the surface and shall be deemed to be completed ten (10) days after the drilling rig moves off the hole or upon removal of the completion rig, whichever is sooner. **Lessee shall have the right to accumulate unused days in any 150-day term during the continuous development program in order to extend the next allowed 150-day term between the completion of one well and the drilling of a subsequent well.**

(d) Upon failure to comply with the one hundred fifty (150) day continuous development program herein provided, this lease shall terminate at to all non-dedicated acreage and as to all zones, formations and horizons which are below the base of the deepest formation from which production is then being obtained in each respective well.

We direct our attention to subsection (c) because it sets out the continuous-development provision.[3] We are specifically interested in the last sentence because it contains the provision that permitted Endeavor, as the lessee, to accumulate unused days. We will refer to this sentence as the accumulation provision.

Endeavor and Energen contend that the accumulation provision is unambiguous. The interpretation of an unambiguous lease is a question of law for the court, subject to de novo review. *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 787 (Tex. 2017); *Albert v. Dunlap Expl., Inc.*, 457 S.W.3d 554, 560 (Tex. App.—Eastland 2015, pet. denied). "The general principles that govern our construction of contracts also govern our construction of mineral leases." *Endeavor*, 554 S.W.3d at 595 (citing *Tittizer*, 171 S.W.3d at 860). We give words "their plain, common, or generally accepted meaning unless the contract shows that the parties used words in a technical or different sense." *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015).

Endeavor contends that the plain language of the accumulation provision shows that the parties agreed to allow Endeavor flexibility to accumulate unused days over the course of the continuous-development program, which in this case spanned five years, and to use them on an as-needed basis so long as Endeavor drilled a well, on average, every 150 days. Conversely, Energen asserts that the plain language of the accumulation provision only permitted Endeavor to extend the 150-

---

[3]We have included the provisions surrounding subsection (c) because they provide context for subsection (c).

day term for a well with unused days from the immediately preceding well. For the reasons set forth below, we agree with Energen's interpretation.

The accumulation provision begins with the phrase: "Lessee shall have the right to accumulate unused days in any 150-day term during the continuous development program . . . ." This language indicates that the parties intended to allow the lessee to accumulate unused days from any term during the continuous-development program. The second half of the sentence specifies the manner in which accumulated days may be used—"in order to extend the next allowed 150-day term between the completion of one well and the drilling of a subsequent well." By limiting the use of unused days to the "next allowed" 150-day term, the language of the accumulation provision limits the use of unused days arising from the "early" drilling of one well to be used only to extend the 150-day term for the drilling of the next well. "Next" is defined as "immediately adjacent (as in place, rank or time)." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 835 (11th ed. 2004); *see In re Tallgrass Prairie Holdings, LLC*, 333 P.3d 899, 908 (Kan. Ct. App. 2014) (citing THE AMERICAN HERITAGE DICTIONARY 1189 (5th ed. 2011) for the following definition of "next": "Immediately following, as in time, order, or sequence").[4] Accordingly, we agree with Energen's interpretation of the accumulation provision.

Endeavor asserts that Energen's interpretation renders the words "accumulate" and "extend" meaningless. Endeavor asserts that "accumulate" means "to amass or collect" and that "extend" means "to 'increase the duration of' a time period." Endeavor asserts that, unless it was permitted to amass unused days like pennies in a jar to be used whenever it chose to use them, perhaps years later, it was not permitted to accumulate unused days to extend future terms. We disagree with Endeavor that "accumulate" and "extend" are rendered meaningless. Under

---

[4]Courts may look to dictionaries to discern the meaning of a commonly used term that the contract does not define. *Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex. 2011).

Energen's construction, Endeavor was permitted to accumulate unused days from the drilling of one well to extend the 150-day term for the next well. However, the accumulation provision limited the manner in which Endeavor could accumulate days to extend terms. We disagree that the provision's limitation rendered the terms meaningless.

Endeavor also asserts that the phrase "150-day term" is a "label" that "is not a limitation in any sense." Endeavor further asserts that "150 days is only a beginning, not an end." Endeavor asserts that "terms" rather than "days" "are what are important to the construction" of the accumulation provision. Under Endeavor's construction, the phrase "150-day" is omitted from the accumulation provision.[5] Under this construction, Endeavor asserts that the term for drilling the thirteenth well, as measured from the completion of the twelfth well, was 377 days because 227 unused days were available to extend the 150-day term for the thirteenth well.

We disagree that "150-day" is only a label in the accumulation provision. The term is used at least seven times in Paragraph 16, including twice in the accumulation provision. Subsection (d) clarifies that the continuous-development program was a "one hundred fifty (150) day continuous development program." Thus, the term "150-day" is a significant part of the accumulation provision as well as the continuous-development clause. Furthermore, the continuous-development program was drafted as a well-to-well program with a 150-day requirement for the drilling of each successive well. Under the express terms of the accumulation provision, only unused days from the immediately preceding well could be used to extend the 150-day period for the next well. Unused days from any other preceding well did not extend the term for a later well because the provision required the term

---

[5]Endeavor restates the accumulation provision as follows in its reply brief: "Lessee shall have the right to accumulate unused days in any . . . **term** . . . in order to extend the next allowed . . . **term**."

to reset to 150 days for each new well, with the only exception being unused days from the immediately preceding well.

Endeavor also asserts that Energen's construction either ignores or adds language to the lease. *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003) (Courts may not rewrite the parties' contract, nor should courts add to its language.). Specifically, Endeavor contends that the plain language of the provision does not "say that unused days may only be used in a certain term and, if not used, are lost." We disagree that Energen's construction either ignores or adds language to the accumulation provision. The plain language of the provision limits the use of unused days to only the next allowed 150-day term. When the terms of a contract are plain, definite, and unambiguous, courts must enforce the contract as written. *Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex. 1965).

Endeavor additionally asserts that its interpretation is consistent with the dominant purpose of an oil and gas lease—to discover and produce oil and gas. Specifically, Endeavor contends that, by including the right to accumulate unused days to extend a 150-day continuous-development period, "the parties contemplated and intended a development program which allowed flexibility in the timing of wells so that the Lessee could benefit from the business environment it found itself in at any particular moment."

The accumulation provision is contained within a continuous-development clause. The Texas Supreme Court addressed the purpose of a continuous-development clause in *Endeavor*. 554 S.W.3d at 597. A continuous-development clause serves to balance the interest of the lessor in seeking full development of the leased acreage versus the lessee's possible preference for delaying full production based on market conditions. *Id.* When a lease covers a substantial amount of acreage, the parties typically utilize a continuous-development clause to insure that the large amount of acreage is fully developed. Bruce M. Kramer, *Oil and Gas*

*Leases and Pooling: A Look Back and a Peek Ahead*, 45 Tex. Tech L. Rev. 877, 881 (2013). The clause is based on "*continuous* drilling operations." *Endeavor*, 554 S.W.3d at 597 (quoting 3 Patrick H. Martin & Bruce M. Kramer, *Williams & Meyers Oil and Gas Law* § 617 (LexisNexis Matthew Bender 2017)). As noted by the court, "the required development efforts must 'be continuous with no gap.'" *Id.* (quoting *Rogers v. Osborn*, 261 S.W.2d 311, 315 (Tex. 1953) (Wilson, J., concurring)).

The parties' inclusion of a continuous-development clause indicates an intent to promote continuous development of the entire leasehold estate. Clauses of that type "replace the lessor's need to utilize the implied covenant of reasonable development as the sole means to see that its acreage is fully developed." *See Kramer*, 45 Tex. Tech L. Rev. at 881. Energen's construction of the accumulation provision is consistent with the purpose of the continuous-development clause. Conversely, Endeavor's construction, which permitted a gap in development of over a year, conflicts with the purpose of a continuous-development clause.

Finally, Endeavor contends that Energen's construction would result in a forfeiture because such an interpretation "divest[s] Endeavor of its leasehold interest in the majority of the leased premises, without compensation." Endeavor also asserts that the continuous-development clause should not be interpreted as a special limitation. The Texas Supreme Court addressed similar arguments in *Endeavor* with respect to a retained-acreage provision contained within a continuous-development clause. 554 S.W.3d at 606–07. The court held in *Endeavor* that the lower court's construction of a lease resulted in a partial termination, not a forfeiture, where the partial termination arose from a special limitation on the lessee's leasehold interests. *Id.* at 606. "A special limitation in an oil and gas lease provides that the lease will automatically terminate upon the happening of a stipulated event." *Id.* A court will not find a special limitation "unless the language is so clear, precise, and unequivocal that we can reasonably give it no other meaning." *Id.* (quoting *Anadarko Petroleum*,

11

94 S.W.3d at 554).  We disagree with Endeavor's assertion that the plain, grammatical language of the accumulation provision can be read in a manner other than Energen's interpretation of it.  Accordingly, the accumulation provision imposed a special limitation with which Endeavor did not timely comply.  Therefore, the trial court did not err by granting Energen's motion for partial summary judgment and denying Endeavor's motion for partial summary judgment.  We overrule Endeavor's two issues on appeal.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


October 25, 2018

Panel consists of: Bailey, C.J.,
Willson, J., and Wright, S.C.J.[6]

Willson, J., not participating.

---

[6]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.