In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00007-CV
_____

**FORT APACHE ENERGY, INC., Appellant**

**V.**

**HOUSTON ENERGY, L.P., Appellee**

**On Appeal from the 75th District Court**
**Liberty County, Texas**
**Trial Cause No. CV1206150**

**MEMORANDUM OPINION**

In this appeal, we consider whether the trial court properly granted a motion for summary judgment in an oil and gas royalty dispute. Fort Apache, Inc. appeals from the trial court's judgment awarding Houston Energy, L.P. a 1.501981 percent overriding royalty interest in all of the oil, gas, and other minerals produced by two wells in Liberty County, Texas. We conclude that the trial court properly found that the agreement between the parties is unambiguous, that Fort Apache's

obligations under the assignment were not excused based on its claim of mistake, and that the overriding royalty reserved by Houston Energy through the assignment is 1.501981 percent of all of the minerals produced by the two wells that are producing from the tracts whose minerals are the subject of the assignment. We affirm the trial court's final judgment.

## Background

This dispute concerns an overriding royalty interest retained by Houston Energy in an agreement in which it assigned Fort Apache its interests in the minerals on several tracts of property.[1] The mineral interests that Houston Energy owned are traced to several leases, but only the Balcon Steel and the Maley leases are relevant to the arguments that the parties present in the appeal.

According to Fort Apache, it agreed to pay an overriding royalty based on a Houston Energy fractional ownership in the minerals that it received under the assignment. In other words, Fort Apache contends that the agreement should not be construed to require that it pay an overriding royalty interest on all oil and gas sales from the production relevant to the tracts at issue without reducing its payment to

---

[1] There are two wells that produce minerals relevant to the tracts, which the parties refer to as the Penn Cat Number One and the Penn Cat Number Two. The record is not clear whether the tracts discussed that are relevant to these two wells had been pooled by the lessor of the minerals into pooled units.

account for the fact that Houston Energy did not own one hundred percent of the minerals in the tracts that were the subject of its assignment.

In response, Houston Energy contends that the agreement is unambiguous, and that it obligates Fort Apache to pay 1.501981 percent of all of the oil and gas sold from the tracts relevant to the assignment, without reduction based on its fractional ownership interest in the minerals that it owned on the tracts that were assigned. With respect to Houston Energy's reservation of an overriding royalty, the assignment, which was executed by both of the parties in 2010, provides:

> [Houston Energy] does hereby except and reserve a net overriding royalty interest of 1.501981% of 8/8ths ("Said Overriding Royalty Interest") in and to all of the oil, gas and other minerals produced, saved and marketed pursuant to the terms and provisions of the Subject Leases, covering the lands described therein, hereinafter called "said lands," including any extensions or renewals of the Subject Leases acquired by or for [Houston Energy].
>
> . . . Such overriding royalty payments shall be paid or delivered to [Houston Energy] in the same manner as that provided in the Subject Leases for the payment of royalty to the Lessor therein, subject to the terms and provisions hereof.

According to Fort Apache, it never intended to agree to a provision that would require that it pay Houston Energy an overriding royalty on all the minerals produced by the wells without any reduction to account for the fact that Houston Energy did not own all of the minerals in the tracts that are the subject of the assignment. To support its argument, Fort Apache points to an overriding royalty

3

agreement that it negotiated with another entity approximately a week before entering into the agreement at issue. Under that agreement, which relates to minerals on the same tracts as those in Houston Energy's assignment, the percentage overriding royalty provision accounted for that entity's fractional ownership of the minerals in the tracts subject to its assignment.

In 2012, Houston Energy sued Fort Apache for breaching the assignment after Fort Apache suspended payments of Houston Energy's overriding royalty. Additionally, Houston Energy asked the trial court to declare the agreement between Houston Energy and Fort Apache to be valid and enforceable.

In 2013, Houston Energy filed a traditional motion for summary judgment, seeking to resolve Fort Apache's claim that it was not required to calculate the overriding royalty as a product of the stated percentage multiplied by all of the minerals produced from the tracts covered by the assignment. Additionally, Houston Energy's motion sought to establish that the total overriding royalty burden created by the assignment did not exceed a five percent maximum overriding royalty restriction provision that is found in two of the leases to which Houston Energy traces its minerals.[2] Houston Energy's motion is supported by the

_____

[2] The Balcon Steel and Maley leases, two of the leases subject to the assignment, contain provisions that restrict Houston Energy from creating an

4

affidavit of Allen Wilhite, Houston Energy's vice-president. Wilhite's affidavit addresses the restriction on the maximum overriding royalty limitation in the Balcon Steel and Maley leases.[3] Wilhite concludes that the total overriding royalty burden on the leases, including Houston Energy's overriding royalty of 1.501981 percent, does not exceed the five percent restriction provision found in the Balcon Steel and Maley leases.

In its response to Houston Energy's motion, Fort Apache argued that the agreement should be reformed so that the total overriding royalty burden to the

overriding burden that together with other overriding royalty reservations would burden those leases by an overriding royalty of more than five percent.

[3] The restriction, which is found in an addendum to the Maley/Fort Apache lease, states: "Additional Burdens: It is agreed by and between Lessor and Lessee that Lessee shall not create additional overriding royalty burdens affecting the leased premises in excess of (5%) without the prior approval of Lessor."

The parties do not dispute that this same provision is found in the Balcon Steel/Fort Apache lease, another lease that is referenced in the assignment. Because many of the provisions in the copies of the leases that were filed as summary judgment evidence are illegible, we are unable to verify that an overriding royalty restriction identical to the one in the Maley lease is also contained in the Balcon Steel lease. Nonetheless, the parties do not dispute that the stated restriction is in these two leases, nor do they dispute that these two leases are among the leases that are the subject of Houston Energy's assignment. Therefore, we treat the representation that the restriction is in both leases as undisputed for the purpose of this appeal. *See* Tex. R. App. P. 38.1(g) (stating that in a civil case, an appellate court will accept as true the facts stated in the appellant's brief unless another party contradicts them); *see also Western Steel Co. v. Altenburg*, 206 S.W.3d 121, 124 (Tex. 2006) (noting that an appellate court normally accepts the facts that the appellant states in its brief unless the opposing party contradicts them).

Maley and Balcon Steel leases would not violate the restrictions in the Balcon Steel and Maley leases. According to Fort Apache, Houston Energy's overriding royalty should be reduced to reflect the working interest that Houston Energy owned in the leases that it assigned to Fort Apache, 6.81144 percent. According to Fort Apache, unless Houston Energy's overriding royalty is reduced, the total overriding royalty burden violates the royalty restriction provision found in the Balcon Steel and Maley leases. Additionally, Fort Apache argues that the summary judgment evidence raises fact issues on its claim that Houston Energy's overriding royalty percentage should be reduced to account for its fractional ownership in the minerals that it assigned to Fort Apache.

Fort Apache's response is supported by the affidavit of Fort Apache's president, Allan Bloxsom III. Bloxsom's affidavit asserts that Fort Apache intended that Houston Energy's assignment mirror the other assignment that executed with another party approximately a week earlier, which accounted for that parties' fractional ownership of the minerals that Fort Apache received in that assignment. Bloxsom also suggests that the overriding royalty burden created by Houston Energy's construction of the agreement results in a total overriding royalty burden on the Balcon Steel and Maley leases of more than five percent. Finally, Bloxsom suggests that the language used to describe the overriding royalty

6

that Houston Energy reserved in its agreement with Fort Apache is ambiguous or resulted from a mistake that the court should reform.

Houston Energy objected to several of the paragraphs in Bloxsom's affidavit. According to Houston Energy, some of Bloxsom's statements violate the parol evidence rule, while other statements are merely legal conclusions that were not proper summary judgment evidence. The trial court sustained Houston Energy's objections to Bloxsom's affidavit.[4]

In June 2013, the trial court granted Houston Energy's motion for summary judgment. In the judgment, the trial court found, as a matter of law, "that the subject assignment is valid and enforceable and that [Fort Apache] has breached its obligations under the assignment and is liable to [Houston Energy]." At that point, however, the trial court did not award any damages based on its finding that Fort Apache had breached the agreement. We note that Houston Energy's motion for summary judgment did not request the trial court resolve its claim of damages based on its claim that Fort Apache breached the parties' agreement. Thus, the trial court's ruling that Fort Apache breached the agreement was not final because it did

---

[4] Fort Apache also objected to some of the statements made by Houston Energy's vice-president, Wilhite, in his affidavit. However, the trial court overruled these objections, and Fort Apache has not complained of these rulings in its appeal.

not dispose of all of the issues raised by Houston Energy in its suit. Tex. R. Civ. P. 301 ("Only one final judgment shall be rendered in any cause except where it is otherwise specifically provided by law.").

Approximately three months later, Houston Energy filed a second motion for summary judgment. In its second motion, Houston Energy asked the trial court to resolve all remaining issues, including its claim for damages. It also asked the trial court to award its attorney's fees, and to declare that Houston Energy was entitled to collect future overriding royalties based on the agreement's stated percentage of 1.501981 percent. In Fort Apache's response, Fort Apache claimed that the case could not be resolved in summary judgment proceedings because the evidence raised issues of material fact regarding Houston Energy's claim of breach. Additionally, Fort Apache objected to the trial court awarding attorney's fees in a summary judgment proceeding. However, Fort Apache has not complained in its appeal about the trial court's award of fees or included an issue complaining that the damage award is excessive.

Subsequently, the trial court granted Houston Energy's second motion for summary judgment, and its judgment disposed of all of Houston Energy's claims. The trial court found that Fort Apache owed Houston Energy $121,601.84 on Houston Energy's claim that Fort Apache had failed to pay what it owed in

8

overriding royalties. The trial court calculated the award by multiplying 1.501981 percent times the receipts on the sales of all minerals produced from the tracts that Houston Energy assigned to Fort Apache. The trial court also awarded declaratory relief, declaring that the assignment on record "with the Clerk of Liberty County, Texas sets the duties, rights, and obligations, between the Parties. As such, all future royalty payments shall be made in compliance with the Assignment and Bill of Sale with Overriding Royalty Interest[.]"

In its appeal, Fort Apache argues that (1) genuine issues of material fact exist regarding the meaning of the assignment; (2) genuine issues of material fact exist on Fort Apache's affirmative defenses, which asserted that the terms of the parties' written agreement resulted from a unilateral or a mutual mistake; (3) the agreement regarding Houston Energy's overriding royalty is ambiguous; and (4) the trial court erred by denying its objections to Wilhite's affidavit.

Standard of Review

On appeal, we review a trial court's ruling on a motion for summary judgment using a *de novo* standard. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). With respect to Houston Energy's traditional motion for summary judgment, the trial court concluded that there were no genuine issues

9

of material fact on any material issues and that Houston Energy was entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). In an appeal from a summary judgment ruling, all of the evidence presented to the trial court during the summary judgment proceedings is considered by the appeals court in the light most favorable to the party against whom the trial court ruled. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In reviewing the summary judgment evidence, we take as true all of the evidence that is favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the evidence in the nonmovant's favor. *See City of Keller*, 168 S.W.3d at 824; *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004). If the summary judgment evidence establishes that the movant is entitled to a ruling in its favor, we then review the opposing party's summary judgment evidence to determine if that evidence creates a genuine issue of material fact on at least one of the elements of the claim that is in dispute. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979).

## Enforceability of an Unambiguous Contract

In this case, the dispute concerns the meaning of the parties' agreement, whether Houston Energy's agreement created a total overriding royalty burden affecting two of the leases of more than five percent, and whether Fort Apache raised a material fact issue on its claim that the agreement should be reformed based on its claim of mistake. Initially, we note the nature of mineral leases and assignments, as they are the types of agreements that are relevant to this case. "An oil and gas lease is a contract, and its terms are interpreted as such." *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 860 (Tex. 2005). "An assignment is a contract between the assignor and assignee, and operates by way of agreement or contract." *Univ. of Tex. Med. Branch at Galveston v. Allan*, 777 S.W.2d 450, 453 (Tex. App.—Houston [14th Dist.] 1989, no pet.). In the absence of an ambiguity, courts will enforce written agreements between parties based on the intentions of the parties as those intentions are expressed in the parties' agreement. *Tittizer*, 171 S.W.3d at 860.

To prevail on its breach of contract claim, Houston Energy was required to prove (1) the existence of a valid contract, (2) the plaintiff performed or tendered performance, (3) the defendant breached the contract, and (4) the plaintiff was damaged. *See Bank of Tex. v. VR Elec., Inc.*, 276 S.W.3d 671, 677 (Tex. App.—

11

Houston [1st Dist.] 2008, pet. denied). A breach occurs when a party fails to perform an act that it has expressly or impliedly promised to perform. *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 769-70 (Tex. App.—Dallas 2005, pet. denied). In this case, Houston Energy filed a summary judgment motion that claimed that Fort Apache failed to fully perform its obligation to pay the overriding royalties that it owed under the terms of the parties' written assignment.

Since issues one and three revolve around the trial court's finding that the assignment was not ambiguous, we discuss these two issues together. In issue one, Fort Apache argues that the summary judgment evidence before the trial court raises genuine issues of material fact on its claims that the parties do not have a valid and enforceable agreement. In issue three, Fort Apache contends the trial court erred in finding that the assignment was unambiguous.

Fort Apache does not contend that it is not a party to the assignment at issue. Instead, Fort Apache contends that the assignment, due to its ambiguity, failed to accurately reflect the agreement between it and Houston Energy. When a contract is not ambiguous, construing the meaning of the terms in a contract are matters that are resolved by the court. *See MCI Telecomm. Corp. v. Tex. Utilities Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999). To determine the meaning of a written agreement, and to evaluate a claim that it is ambiguous, we examine and consider the entire

12

contract, harmonizing and giving effect to all provisions so that none are rendered meaningless. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). A contract is unambiguous if it can be given a definite or certain legal meaning. *DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999).

Even if the parties disagree on the meaning of a contract—as occurred here—a disagreement about an agreement's meaning is not sufficient to make the contract ambiguous. *See Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). Additionally, parol evidence about what a party intended when it negotiated a written agreement is not evidence that is relevant to whether the writing is ambiguous. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).

Fort Apache points to the "1.501981% of 8/8ths" language in the agreement's reservation clause as the language that makes the assignment ambiguous. In the reservation clause, Houston Energy reserved a net overriding royalty of 1.501981 percent of all production attributable to the "Subject Leases."[5]

---

[5] The assignment defines the "Subject Leases" as consisting of leases, unit designations, and right of way agreements, which are then further described in an attached exhibit. The attached exhibit lists four leases, two unit designations, and nine right of way agreements. The assignment then defines these instruments, collectively, as the "Subject Leases."

If these terms of the reservation clause can "be given a definite or certain meeting as a matter of law," the reservation clause is not ambiguous. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996).

In the assignment, the parties expressed the reservation clause as a percentage of a fraction. Generally, courts construe the size of a reservation of a fraction of a fraction by multiplying the two fractions together. *Pickens v. Hope*, 764 S.W.2d 256, 258-59 (Tex. App.—San Antonio 1988, writ denied) (holding "an undivided 1/4 of the usual 1/8 royalty" reserved a fixed one thirty-second royalty); *Hawkins v. Tex. Oil & Gas Corp.*, 724 S.W.2d 878, 889 (Tex. App.—Waco 1987, writ ref'd n.r.e.) (holding that a grant of "1/4 of the 1/8 royalty interest" conveyed a fixed one thirty-second royalty interest); *Helms v. Guthrie*, 573 S.W.2d 855, 857 (Tex. Civ. App.—Fort Worth 1978, writ ref'd n.r.e.) (holding reservation of "1/2 of the 1/8th royalty (same being a 1/16th of the total production)" described a fixed royalty).

Under Houston Energy's agreement with Fort Apache, the parties chose to express the stated overriding royalty interest as a product of two numbers. Because the reservation clause can be given a specific and definite meaning, it is not

ambiguous. We hold that the trial court gave proper meaning to the plain language of the provision by multiplying the numbers together.[6]

Fort Apache also argues that it expected the reservation clause to reflect the fractional interest that Houston Energy held in the leases that it assigned to Fort Apache. However, a party's testimony about what it sought to accomplish in negotiating a written agreement is not relevant to construing an otherwise unambiguous written instrument. *See Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 732 (Tex. 1981). "Where the meaning of the contract is plain and unambiguous, a party's construction is immaterial." *Id.*

---

[6] In its appeal, Fort Apache has not raised an issue that asserts the trial court failed to apply a proportionate reduction clause, found in another part of the assignment, when it calculated the damages that resulted from Fort Apache's breach. The assignment's proportionate reduction clause provides:

> If any of the Subject Leases cover less than the entire fee simple mineral estate in a tract of land described therein, then the overriding royalty interest hereby reserved by Assignor shall be reduced proportionately as to such tract of land.

Although Fort Apache has not argued this provision applies with respect to the trial court's damage award, by affirming the judgment we do not intend to imply that the damages that the trial court awarded under the judgment on Houston Energy's breach of contract claim are consistent with all of the terms of the parties' agreement. However, we are not allowed to reverse a judgment based on unassigned error. *See Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex. 1993) ("We have held repeatedly that the courts of appeals may not reverse the judgment of a trial court for a reason not raised in a point of error."); *see also* Tex. R. App. P. 38.1 (the appellant's brief must state concisely all issues presented for appeal).

We are also not persuaded that any issues of material fact exist on the question of whether the parties formed a valid contract. A meeting of the minds is necessary for parties to form binding contracts. *See David J. Sacks v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008). However, parties that sign written agreements are presumed to know their contents. *See In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 232 (Tex. 2008). Therefore, Fort Apache was required to read the written agreement before signing it to protect itself from an unfavorable bargain. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 134 & n.37 (Tex. 2004). Even if Fort Apache's employees or its agents failed to read the agreement, "a party is bound by the terms of the contract [it] signed, regardless of whether [it's agents] read it or thought it had different terms[,]" in the absence of a claim of fraud, misrepresentation, or deceit. *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005).

Fort Apache also argues that the reservation clause is ambiguous based on a restriction found in two of the "Subject Leases." The provision in those leases restricts Houston Energy from creating a total overriding royalty burden of more than five percent. According to Fort Apache, Houston Energy's construction of the reservation clause violates the total overriding royalty restriction. But, Houston Energy's overriding royalty is 1.501981 percent, which is the same percentage as that reserved by Houston Energy on all of the minerals attributed to the Balcon

Steel and Maley leases. In this case, the summary judgment evidence does not show that Houston Energy created an additional overriding royalty burden that, when added with others, violated the restriction found in the Balcon Steel and Maley leases.

We will not rewrite the parties' unambiguous agreement so that it contains an agreement that alters the bargain the parties reduced to writing. *See Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996) ("We have long held that courts will not rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained."). In this case, Fort Apache did not allege that it was defrauded or that its agreement was secured by misrepresentation or deceit. The reservation clause allows no reduction based on Houston Energy's fractional ownership of the minerals as they relate to the overriding royalty, and Fort Apache's arguments to the contrary are not persuasive. We hold the summary judgment evidence established that the parties had a valid contract and that the reservation clause in the agreement is not ambiguous. Issues one and three are overruled.

## Mistake

In its second issue, Fort Apache asserts the summary judgment evidence raises issues of material fact on its affirmative defenses that claim the assignment

17

should be reformed due to a mistake. According to Fort Apache, the assignment is not valid, and it is not enforceable because the agreement resulted from a mistake about the size of the mineral interest that Houston Energy reserved as an overriding royalty interest.

Fort Apache argues that the assignment is unenforceable as written under two types of mistake, mutual mistake and unilateral mistake. "A mutual mistake occurs when contracting parties have a common intention, but, due to a mutually-held mistake regarding a material fact, the written contract does not accurately reflect that intention." *Trahan v. Mettlen*, 428 S.W.3d 905, 908 (Tex. App.—Texarkana 2014, no pet.) (citing *Cherokee Water Co. v. Forderhause*, 741 S.W.2d 377, 379 (Tex. 1987)). The elements of mutual mistake are a mistake of fact held mutually by the parties, which materially affects the agreed-upon exchange. *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 735 (Tex. App.—Fort Worth 2008, pet. dism'd).

Claims that both parties made a mistake regarding the terms in a written agreement are often difficult to prove because "'[a] party who signs a document is presumed to know its contents . . . .'" *Toler v. Sanders*, 371 S.W.3d 477, 482 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (quoting *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 232 (Tex. 2007)). To prove a mutual mistake, the evidence must show

18

that both of the parties were acting under the same misunderstanding with respect to the same material fact. *Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 326 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). However, because parties should be able to rely on the finality of their agreements, the doctrine of mutual mistake is not available to allow one of the parties to avoid the results of an unhappy bargain. *Williams v. Glash*, 789 S.W.2d 261, 265 (Tex. 1990). In this case, the summary judgment evidence fails to show that Houston Energy was mistaken about the percentage overriding royalty that it intended to retain under the assignment.

The summary judgment evidence also fails to raise a material issue of fact on Fort Apache's claim of unilateral mistake. With respect to claims of unilateral mistake, courts may allow a party equitable relief if the party that entered into the contract by mistake shows that its mistake is so great that enforcing the contract would be unconscionable, the mistake is material, the mistake would have been made regardless of the mistaken party's exercise of ordinary care, and the circumstances are such that the parties can be returned to the status quo. *See James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist.*, 335 S.W.2d 371, 372-73 (Tex. 1960); *Monarch Marking Sys. Co. v. Reed's Photo Mart, Inc.*, 485 S.W.2d 905, 906-07 (Tex. 1972). "'A mistake by only one party to an agreement, not known or

19

induced by acts of the other party[,] will not constitute grounds for relief.'" *Smith-Gilbard v. Perry*, 332 S.W.3d 709, 713-14 (Tex. App.—Dallas 2011, no pet.) (quoting *Johnson v. Snell*, 504 S.W.2d 397, 399 (Tex. 1974)).

In this case, Fort Apache argued that it never intended to agree to an overriding royalty of "1.501981% of all oil and gas produced on the Subject Leases." However, the assignment shows that it did so. The assignment Fort Apache reached with another entity one week before reaching the agreement with Houston Energy regarding the assignment at issue in this case reflects that Fort Apache knew how to negotiate an overriding royalty of the type that it claims it wanted in the agreement that it made with Houston Energy. Nothing in the summary judgment evidence shows that Houston Energy, at the time the parties entered into the agreement, knew that Fort Apache was laboring under a mistaken interpretation of the reservation clause, and there is nothing unconscionable about holding Fort Apache to the unambiguous terms of its written agreement. Finally, the summary judgment evidence does not show that Fort Apache failed to read the agreement or that it exercised reasonable care before doing so based on its interpretation of the overriding royalty provision in the reservation clause of the assignment.

Generally, a unilateral mistake by a party to a written agreement is not sufficient to avoid the agreement being enforced. *See Cigna Ins. Co. of Tex. v. Rubalcada*, 960 S.W.2d 408, 412 (Tex. App.—Houston [1st Dist.] 1998, no pet.). We conclude that Fort Apache has not demonstrated that the summary judgment evidence before the trial court raised material issues of fact on the elements of its claims alleging unilateral and mutual mistake. Issue two is overruled.

## Affidavit

In issue four, Fort Apache argues that the trial court erred in ruling that portions of Bloxsom's affidavit were inadmissible. We note that the portions of Bloxsom's affidavit that the trial court ruled inadmissible are not statements that addressed the overriding royalty burden created by other leases, they do not show that Bloxsom exercised reasonable care before signing the agreement, nor do they address why enforcing the agreement, as written, is unconscionable. Given that issues one through three were resolved based on the unambiguous language of the contract or on conclusive proof, and that the excluded portions of Bloxsom's affidavit do not address any facts material to these three issues, we hold the trial court's rulings, assuming error, did not cause Fort Apache any harm. *See* Tex. R. App. P. 44.1(a).

## Conclusion

We overrule issues one through four, and we affirm the trial court's final judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on October 30, 2014
Opinion Delivered August 27, 2015

Before McKeithen, C.J., Kreger and Horton, JJ.