**Affirm and Opinion Filed March 19, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

## No. 05-22-00292-CV

**ORCA ASSETS, G.P., L.L.C., Appellant**
**V.**
**JP MORGAN CHASE BANK, N.A., JP MORGAN CHASE BANK, N.A., AS**
**TRUSTEE OF THE RED CREST TRUST, Appellee**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-13886**

## MEMORANDUM OPINION

Before Justices Molberg, Carlyle, and Smith
Opinion by Justice Molberg

Appellant Orca Assets, G.P., L.L.C. appeals from the trial court's summary judgment for appellee JPMorgan Chase Bank, N.A., as trustee for Red Crest Trust, and in JPMorgan's individual capacity. Orca argues the trial court erred in granting summary judgment because the trial court lost its plenary power when JPMorgan nonsuited its claims prior to the case being severed, and Orca nevertheless should have been permitted to counter and defend when JPMorgan was permitted to pursue its claim for attorney's fees. Orca also contends the trial court erred in awarding JPMorgan attorney's fees because Texas Property Code § 114.064 is inapplicable in

this case, Texas Civil Practice & Remedies Code § 37.009 is inapplicable in this case, and it was neither equitable nor just to make such an award. We affirm in this memorandum opinion.

## Background

This dispute arises from a mineral lease. Red Crest Trust owned certain mineral interests in the Eagle Ford Shale, which JPMorgan, as trustee of Red Crest Trust, leased to Orca under an agreement that included a provision shifting the risk of title failure to Orca. After Orca and JPMorgan finalized their agreement, JPMorgan discovered it had leased the minerals six months earlier to another entity, GeoSouthern, which had not recorded its lease in the county records until after Orca and JPMorgan had signed a letter of intent acknowledging the trust's agreement to lease the tracts to Orca. As a result, JPMorgan sent a $3.2 million refund to Orca for its bonus payments under the lease. Orca rejected the refund and initiated litigation.

Orca sued, among others, JPMorgan as trustee of the Red Crest Trust and in its individual capacity in Dallas County on May 12, 2011,[1] alleging Orca was fraudulently induced to purchase an option to lease part of a mineral estate that JPMorgan had already leased to a third party without Orca's knowledge. Orca alleged a JPMorgan employee, Philip Mettham, misrepresented to Orca that the

---

[1] We note that Orca first sued JPMorgan in DeWitt County for the claims at issue here but ultimately nonsuited that suit and refiled in Dallas.

acreage in question was open and available to be leased. Orca asserted causes of action for common law fraud, fraud under § 27.01 of the business and commerce code, negligent misrepresentation, and tortious interference.

Orca relied on the Texas Trust Code[2] in asserting venue was proper in Dallas County, stating its suit was against a corporate trustee whose principal office is located in the county, and, additionally, "the situs of the [trust's] administration is maintained or has been maintained at sometime during the last four-year period" in the county.[3]

JPMorgan counterclaimed on August 2, 2013, seeking declaratory relief and attorney's fees under § 114.064 of the trust code and § 37.009 of the civil practice and remedies code. On August 16, 2013, JPMorgan filed its second amended answer in which it, among other things, sought recovery of its reasonable and necessary attorney's fees under § 114.064 of the trust code and § 38.001 of the civil practice and remedies code. JPMorgan subsequently filed a notice of nonsuit without prejudice of its original counterclaim seeking declaratory relief and attorney's fees, and the trial court dismissed the original counterclaim on October 11, 2013.

On November 6, 2013, Orca filed a seventh amended petition seeking, in addition to the previously described causes, declaratory relief—in the event Orca

---

[2] The Texas Trust Code is the short title for Subtitle B (chapters 111 through 117) of the Texas Property Code. *See* TEX. PROP. CODE § 111.001.

[3] TEX. PROP. CODE § 115.002(c).

recovered the property at issue—stating JPMorgan wrongfully repudiated its agreement with Orca, JPMorgan could not enter any transaction affecting the lease rights with any party other than Orca, and JPMorgan must honor its mineral lease with Orca for the remainder of the lease term.

On November 25, 2013, the trial court entered an agreed order of severance and abatement under which Orca's claim for declaratory relief and JPMorgan's claims for attorney's fees[4] were severed into cause number DC-13-13886—this cause. The order stated it was rendered "pursuant to the parties' agreement regarding severance and abatement" and specified it did not waive Orca's objections to the rule 166 order we discuss next.

The trial court then determined, in a rule 166(g) order, that Orca's remaining, unsevered breach of contract and tort claims were without merit. The court entered a final and appealable take nothing judgment against Orca on those claims, which Orca appealed. Meanwhile, JPMorgan's severed attorney's fee claim was abated until a final ruling from the court of appeals on Orca's non-severed contract and tort claims.

On appeal, a different panel of this Court "conclude[d] that questions of fact remain regarding Orca's claim that it was fraudulently induced into a contractual relationship with JPMorgan" and reversed the trial court's rulings on fraud and

---

[4] Although JPMorgan had nonsuited its counterclaim, as noted above, JPMorgan also asserted in its second amended answer that it sought recovery of its attorney's fees under § 114.064 of the trust code.

negligent misrepresentation.  *See Orca Assets, G.P., L.L.C. v. JPMorgan Chase Bank, N.A.*, 542 S.W.3d 591, 606 (Tex. App.—Dallas 2015).  However, the Supreme Court of Texas reversed our decision because it "determined, as a matter of law, that [Orca] cannot show justifiable reliance" and reinstated the trial court's judgment for JPMorgan.  *See JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 660 (Tex. 2018).

Following this, on April 3, 2020, JPMorgan moved to lift the abatement of its severed attorney's fees claim.  The trial court lifted the abatement two weeks later.  JPMorgan filed an amended counterclaim on October 6, 2020, stating it was entitled to recover reasonable and necessary attorney's fees under § 114.064 of the property code and § 37.009 of the civil practice and remedies code.

Orca filed a supplement to its claims and an answer to JPMorgan's amended counterclaim.  In response to JPMorgan's claim for attorney's fees, Orca argued it "would be neither equitable nor just to award attorney's fees to [JPMorgan] in this case."  Orca asserted supplemental claims for unjust enrichment, conversion, money had and received, and attorney's fees, arguing the bank obtained $3.2 million by fraud.  In a second supplement, Orca added claims for fraud, statutory fraud, negligent misrepresentation, and breach of contract.  Orca also cast all of its affirmative claims as defenses to JPMorgan's claim for attorney's fees, stating the fees were barred by JPMorgan's fraud, statutory fraud, fraud by nondisclosure,

breach of contract, and negligent misrepresentations. JPMorgan answered, raising affirmative defenses including res judicata and collateral estoppel.

Orca moved for summary judgment on JPMorgan's attorney's fees claims, arguing that property code § 114.064 is inapplicable because it only allows fees for proceedings brought under the trust code and that this cause is not such a proceeding. Orca alternatively argued fees under that section would be neither equitable nor just because JPMorgan "received $3.2 million from Orca for leases that [JPMorgan] had misrepresented as being available for lease, when [JPMorgan] had already sold the leases to another party" and thus had "unclean hands." The trial court denied Orca's motion for summary judgment.

On August 25, 2021, JPMorgan moved for a summary judgment on Orca's claims, arguing they were barred by res judicata and collateral estoppel because they were the same claims Orca previously litigated unsuccessfully and there was no basis for awarding it attorney's fees. In response to JPMorgan's motion for summary judgment, Orca seemingly supplemented its own summary judgment motion in arguing the bank had nonsuited its attorney's fees claim prior to severance and the trial court therefore lost plenary power over the claim. Orca also argued the attorney's fees claim could not be severed from the underlying cause.

The trial court denied Orca's traditional and no evidence motion for summary judgment, granted JPMorgan's motion for summary judgment on Orca's affirmative

claims and "the associated defenses based on those claims," and ordered that Orca take nothing on its claims.

The remaining matter of JPMorgan's attorney's fees was tried to the court. The parties stipulated to the facts as outlined in the supreme court's opinion which we will discuss below in addressing Orca's argument that the trial court erred in awarding attorney's fees to JPMorgan. JPMorgan admitted evidence on the reasonableness and necessity of the fees it sought—about $2.4 million in total—through the testimony and declaration of its counsel, David Jed Williams.[5] The parties then presented evidence relating to the equities of awarding JPMorgan attorney's fees that we will discuss below.

The trial court rendered a final judgment for JPMorgan, awarding it attorney's fees pursuant to § 114.064 of the property code in an amount of $2,310,000 and costs of $102,186.69, plus conditional appellate fees. This appeal followed.

**Discussion**

At the outset, we note that while JPMorgan briefed § 37.009 of the civil practice and remedies code as an alternative basis for the award of attorney's fees, JPMorgan indicated during oral argument that it was only arguing the award of fees was supported by § 114.064 of the property code. Furthermore, because we

_____

[5] Because Orca does not challenge the reasonableness or amount of the fees awarded but only their equity, we refrain from discussing in detail JPMorgan's evidence supporting the reasonableness of the fees.

conclude the award was supported by the trust code, we pretermit discussion of all of Orca's arguments relating to § 37.009.[6] *See* TEX. R. APP. P. 47.1.

*Validity of severance*

We first consider Orca's contention that the severance of JPMorgan's claim for attorney's fees was erroneous, thus precluding relief on the claim in the severed proceeding. "Any claim against a party may be severed and proceeded with separately." TEX. R. CIV. P. 41. This rule grants the trial court broad discretion in the matter of severance, and accordingly, we will not disturb the trial court's ruling severing a claim unless it has abused its discretion. *Weilbacher v. Craft*, No. 05-13-01252-CV, 2014 WL 6466856, at *6 (Tex. App.—Dallas Nov. 19, 2014, pet. denied) (mem. op.). A claim is properly severable if (1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues. *Id.*

Orca relies on two cases in arguing the trial court erred in severing JPMorgan's claim for attorney's fees. In *Dalisa, Inc. v. Bradford*, 81 S.W.3d 876, 879–80 (Tex. App.—Austin 2002, no pet.), the trial court granted Bradford's motion for summary judgment on his claim for declaratory relief and immediately afterwards "severed from the cause Bradford's claim for declaratory relief under the

---

[6] Accordingly, we do not address Orca's arguments that JPMorgan's claim for fees under § 37.009 of the civil practice and remedies code did not survive JPMorgan's nonsuit of its counterclaim and that § 37.009 was an improper basis for fees.

Act, leaving for an independent adjudication Bradford's claim for attorney's fees under section 37.009 of the Act and Dalisa's counterclaims." The court of appeals concluded a claim for attorney's fees under § 37.009 could not be severed from its associated claim for declaratory relief because the two claims are "merely different phases of a single cause of action." *Id.* at 880. The court of appeals dismissed the appeal for want of jurisdiction, reasoning that the severance order's invalidity rendered the judgment interlocutory, not final. *Id.* at 882.[7]

Following *Dalisa,* in *Barclay v. Richey*, No. 09-17-00026-CV, 2019 WL 302661, at *9 (Tex. App.—Beaumont Jan. 24, 2019, pet. denied) (mem. op.), the trial court granted Richey's motion to sever Barclay's declaratory judgment claim into a separate cause, and the severance order specifically stated it did not "dispose of" Barclay's attorney's fees request on her declaratory judgment claim. The trial court later rejected Barclay's claim for fees because, it stated, it lacked jurisdiction to award such fees, having previously severed the declaratory judgment action. *Id.* The court of appeals concluded the trial court erred in severing the declaratory relief claim from the associated claim for attorney's fees. *Id.* at 10. The court stated:

> As Barclay neither appealed from the severed cause, nor objected to the trial court's ruling severing her claim for attorney's fees from the final judgment in the severed cause, she waived her right to complain in the cause associated with this appeal about the trial court's decision that

[7] The en banc Austin Court of Appeals recently overruled *Dalisa* in *Bertucci v. Watkins*, No. 03-20-00058-CV, 2022 WL 3328986, at *3 (Tex. App.—Austin Aug. 12, 2022) (op. on en banc reconsideration), where the court concluded *Dalisa* erred "insofar as it holds that a finding of an improper severance divests this Court of jurisdiction over the appeal such that the proper procedure is to vacate the severance and dismiss the appeal for want of jurisdiction."

> effectively severed her claim for attorney's fees into the cause in which she did not appeal. Thus, the trial court correctly ruled that it no longer retained jurisdiction of the severed cause because its plenary power expired thirty days after it rendered judgment in the severed cause.

*Id.*

We cannot conclude *Dalisa* and *Barclay* control the outcome of this case. To begin with, JPMorgan's claim for fees under the trust code is its own affirmative claim for relief in response to Orca's suit, *see Lyco Acquisition 1984 Ltd. P'ship v. First Nat. Bank of Amarillo*, 860 S.W.2d 117, 121 (Tex. App.—Amarillo 1993, writ denied)—not a claim for fees associated with its own declaratory judgment action, as in *Dalisa* and *Barclay*. But the chief difference between Orca's authorities and this case for purposes of resolving this appeal is the parties' explicit agreement here to sever the attorney's fees claim. As this Court has previously stated, "A severance, even though erroneous, is effective and, in the absence of objection, permits valid, final judgments to be rendered in both proceedings." *Inman v. O'Donnell*, 722 S.W.2d 16, 18 (Tex. App.—Dallas 1986, no writ).

Even short of explicit agreement, other courts have concluded failure to object waives a complaint regarding a severed attorney's fees claim. In *Hyde v. Hawk*, No. 07-14-00059-CV, 2017 WL 5763069, at *1 (Tex. App.—Amarillo Nov. 27, 2017, no pet.) (mem. op.), the appellee sought declaratory relief and attorney's fees and moved for a summary judgment on the relief, which the trial court granted. The trial court then granted the appellee's motion to sever the summary judgment ruling and

signed a final judgment, from which the appellant appealed, arguing, among other things, that the severance was erroneous because it split the attorney's fee claim from the claim for declaratory relief. *Id.* The appellant relied on *Dalisa*. *Id.* at *3. The Amarillo Court of Appeals concluded the issue was not preserved for appellate review because, although the appellant objected to the motion to sever, he did not discuss the claim for attorney's fees, contend the appellee sought to sever a single cause of action for declaratory relief, or cite *Dalisa*. *Id.* at *3 (citing TEX. R. APP. P. 33.1).

Here, Orca not only failed to object to the severance but agreed to it. Accordingly, we conclude Orca waived any complaint of error resulting from the severance order. *See In re C.S.B.*, No. 05-19-00627-CV, 2020 WL 2715188, at *5 (Tex. App.—Dallas May 26, 2020, no pet.) (mem. op.) (concluding party waived objection to order by agreeing to order).

Relatedly, we conclude the invited error doctrine bars Orca's argument on appeal. A party to a lawsuit cannot ask something of a trial court and then complain on appeal the trial court committed error in granting the party's request. *Naguib v. Naguib*, 137 S.W.3d 367, 375 (Tex. App.—Dallas 2004, pet. denied); *see also Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 861 (Tex. 2005) (describing this doctrine as both "estoppel" and "invited error"). This rule is grounded in justice and dictated by common sense. *Tittizer*, 171 S.W.3d at 861.

–11–

Here, both parties asked the trial court to sever JPMorgan's attorney's fees claim, and the trial court entered the order of severance pursuant to their agreement. Given this, we conclude the invited error doctrine bars Orca from complaining on appeal of any error in the severance. *See In re B.Y.B.*, No. 09-22-00402-CV, 2023 WL 3114664, at *4 (Tex. App.—Beaumont Apr. 27, 2023, pet. denied) (mem. op.) (concluding estoppel prevented party from arguing on appeal that severance deprived trial court of subject matter jurisdiction after party requested severance in trial court and trial court entered agreed order of severance). We overrule Orca's first issue.

*Orca's defenses*

In a second issue, Orca argues the trial court erred in granting JPMorgan's motion for summary judgment because Orca should have been permitted to "counter and defend" against JPMorgan's claim for attorney's fees. It argues "Orca should have been allowed to present its defenses to the extent that the specific claim had not been foreclosed by the Texas Supreme Court" and that "the initial action did not adjudicate the claims of unjust enrichment, conversion, money had and received."

As noted above, the trial court granted JPMorgan's motion for summary judgment and dismissed Orca's affirmative claims and associated defenses. We summarized the summary judgment standard recently as follows:

> "We review summary judgments de novo, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor." *Energen Res.*

*Corp. v. Wallace*, 642 S.W.3d 502, 509 (Tex. 2022). . . . A traditional motion for summary judgment requires the moving party to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 131 (Tex. 2019); *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). If the movant does so, the burden then shifts to the nonmovant to come forward with competent controverting evidence sufficient to raise a genuine issue of material fact. *Lujan*, 555 S.W.3d at 84. "A genuine issue of material fact exists if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

*Eldorado Homeowners' Ass'n, Inc. v. Clough*, No. 05-22-00198-CV, 2024 WL 20170, at *8 (Tex. App.—Dallas Jan. 2, 2024, no pet. h.) (mem. op.).

JPMorgan's motion for summary judgment argued, among other things, res judicata barred Orca's claims in its second supplement because they had been adjudicated by the trial court and ultimately rejected by the supreme court. Under the doctrine of res judicata, if the defendant wins a suit, "the plaintiff is barred from bringing another action on claims actually litigated and also on claims that could have been litigated in the original cause of action." *Jeanes v. Henderson*, 688 S.W.2d 100, 103 (Tex. 1985). Res judicata applies when there is (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action. *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007). It is based on policies reflecting the need to "bring all litigation to an end, prevent vexatious litigation, maintain stability

–13–

of court decisions, promote judicial economy, and prevent double recovery." *Barr v. Resol. Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 629 (Tex. 1992). Texas follows a transactional approach to determine whether res judicata applies. *TRO-X, L.P. v. Eagle Oil & Gas Co.*, 608 S.W.3d 1, 11 (Tex. App.—Dallas 2018), *aff'd*, 619 S.W.3d 699 (Tex. 2021). Under this approach, a subsequent suit is barred if it arises out of the same subject matter as the prior suit, and that subject matter could have been litigated in the prior suit. *Daccach*, 217 S.W.3d at 449. In determining what constitutes the same subject matter, we examine "the factual basis of the claim or claims in the prior litigation[,]" analyzing "the factual matters that make up the gist of the complaint, without regard to the form of action." *Barr*, 837 S.W.2d at 630.

Included with JPMorgan's motion for summary judgment were Orca's original petition, seventh amended petition, and the trial court's final judgment for JPMorgan from the un-severed portion of this case. After reviewing the summary judgment record, we conclude Orca's second supplement to its claims reiterated the same factual allegations and theories of recovery rejected in the un-severed portion of the case. In sum, the second supplement alleged that JPMorgan, through Philip Mettham, tortiously leased mineral interests to Orca, having already leased them to GeoSouthern, thus depriving Orca of $3.2 million in bonus payments it made under its agreement with JPMogran. It asserted claims for unjust enrichment, conversion, money had and received, fraud, statutory fraud, negligent misrepresentation, and

breach of contract based upon these allegations. These factual allegations are the same as alleged in the un-severed portion of the case. *See generally JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648 (Tex. 2018). Although Orca presents three new causes of action—unjust enrichment, conversion, and money had and received—they are based upon the same factual allegations and could have been asserted in the un-severed action. *See Barr*, 837 S.W.2d at 630 (in applying res judicata, we disregard the form of the action). Thus, we conclude the trial court did not err in granting JPMorgan summary judgment on this basis. *See Daccach*, 217 S.W.3d 430, 449.

To the extent that Orca argues these affirmative claims should have been permitted to move forward as defenses to JPMorgan's claim for attorney's fees, we conclude this argument is inadequately briefed as it is unsupported by any citations to pertinent authorities. *See* TEX. R. APP. P. 33.1 ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").[8] We overrule Orca's second issue.

*Attorney's fees*

In its third issue, Orca generally contends the trial court erred in awarding JPMorgan attorney's fees, arguing both that § 114.064 is inapplicable as a matter of law because its suit is not a proceeding under the trust code and that the award was

_____

[8] We also observe that, as discussed below in our review of whether the trial court abused its discretion in awarding fees under § 114.064, Orca was permitted to present evidence and make arguments as to why any attorney's fee award for JPMorgan was inequitable and unjust based on its view of the facts.

–15–

not equitable and just, as required by the statute. We will first consider Orca's argument that § 114.064 cannot support the award of attorney's fees. Section 114.064 provides: "In any proceeding under this code the court may make such award of costs and reasonable and necessary attorney's fees as may seem equitable and just." TEX. PROP. CODE § 114.064. This statute "authorizes the recovery of attorney's fees in an action involving a trust." *Schauble v. Schauble as Tr. of Edward R. Schauble Tr.*, No. 11-20-00181-CV, 2022 WL 2839224, at \*12 (Tex. App.—Eastland July 21, 2022, no pet.) (mem. op.); *see also In re Estate of Johnson*, 340 S.W.3d 769, 788 (Tex. App.—San Antonio 2011, pet. denied) (stating the statute "authorizes the recovery of attorney's fees in a trust action").

In determining whether this action is a proceeding under the trust code, we begin with the sweeping language of the trust code's jurisdiction provision: "a district court has original and exclusive jurisdiction over *all proceedings by or against a trustee* and all proceedings concerning trusts . . . ." TEX. PROP. CODE § 115.001(a) (emphasis added). The statute then enumerates ten separate types of proceedings over which a district court has original and exclusive jurisdiction, including, for example, proceedings to construe a trust instrument, ascertain beneficiaries, or determine a question arising in the administration or distribution of a trust. *See id.* The statute clarifies that this list of proceedings "is not exhaustive": "A district court has exclusive and original jurisdiction over a proceeding by or against a trustee or a proceeding concerning a trust under Subsection (a) whether or

–16–

not the proceeding is listed in Subsection (a)." *Id.* § 115.001(a-1). Further, the venue of actions under § 115.001 is determined according to the trust code's venue provision. *See id.* § 115.002(a). Thus, the venue of a proceeding against a trustee "is determined according to" § 115.002. Under § 115.002(c),

> If there are one or more corporate trustees, an action shall be brought in the county in which:
>
> (1) the situs of administration of the trust is maintained or has been maintained at any time during the four-year period preceding the date the action is filed; or
>
> (2) any corporate trustee maintains its principal office in this state.

TEX. PROP. CODE § 115.002(c).

Appropriately then, Orca cited § 115.002 in its original petition in asserting venue was proper in Dallas County, stating its suit was against a corporate trustee whose principal office is located in the county, and, additionally, "the situs of the [trust's] administration is maintained or has been maintained at sometime during the last four-year period" in the county.

Section 115.002 is a mandatory venue provision. *In re Wheeler*, 441 S.W.3d 430, 434 (Tex. App.—Waco 2014, orig. proceeding). Therefore, it is of no significance for our analysis that Orca eventually dropped § 115.002 as a basis for venue in its seventh amended petition. *See Perryman v. Spartan Tex. Six Cap. Partners, Ltd.*, 546 S.W.3d 110, 130 (Tex. 2018) (courts honor plaintiff's choice of venue if the choice is "proper" when case is filed). In that amended petition, Orca

–17–

instead invoked §§ 15.002 (Venue: General Rule) and 15.005 (Multiple Defendants) of the civil practice and remedies code. However, § 15.016 ("action governed by any other statute prescribing mandatory venue shall be brought in the county required by that statute") makes clear that mandatory venue provisions outside Chapter 15 prevail over those contained in the chapter. *See In re J.P. Morgan Chase Bank, N.A.*, 373 S.W.3d 615, 619 (Tex. App.—San Antonio 2012, orig. proceeding) ("Therefore, section 15.016 requires that the mandatory venue provisions in section 115.002 of the Property Code prevail over section 15.011 of the Texas Civil Practice and Remedies Code."). Similarly, the fact that venue may have been proper in Dallas County under both the trust code and under the general provisions of the civil practice and remedies code makes no difference here. In determining whether this suit is a proceeding under the trust code, the pertinent question is which provision ultimately determined proper venue in this case.

Orca relies on *Conte v. Conte*, 56 S.W.3d 830, 831 (Tex. App.—Houston [1st Dist.] 2001, no pet.), where a co-trustee sister sued co-trustee brother seeking a declaratory judgment that an action brought by her to remove the brother as co-trustee would not violate the terms of the trust. The sister prevailed and the brother appealed, arguing the trial court erred in failing to award him attorney's fees under § 114.064. *Id.* at 834. The court of appeals rejected the brother's contention, stating that the "suit was not brought under the Property Code, but under the Declaratory

Judgment Act. Therefore, Joseph, Jr. is not entitled to attorney's fees under the trust provisions of the Texas Property Code." *Id.*

To the extent *Conte* could be considered analogous here, we decline to follow it. After that case was decided, § 115.001 was "amended in 2007 to provide that a district court has original and exclusive jurisdiction over not only all proceedings concerning a trust, but also 'all proceedings by or against a trustee.'" *In re Equinor Tex. Onshore Props.*, No. 05-20-00578-CV, 2020 WL 5939034, at *7 (Tex. App.— Dallas Oct. 7, 2020, no pet.) (mem. op.) (quoting *Wheeler*, 441 S.W.3d at 434–35); *see also* Act of May 16, 2007, 80th Leg., R.S., ch. 451, § 11, 2007 Tex. Gen. Laws 801, 804. Thus, *Conte* did not address the expansive jurisdiction provision before us today.

Here, Orca sued trustee JPMorgan regarding a lease of trust property and specifically invoked the trust code's venue statute in its original petition. Given this, and our above discussion of §§ 115.001–.002, we conclude Orca's suit against JPMorgan was a proceeding under the Texas Trust Code and § 114.064 thus permitted an award of attorney's fees. *See Moody v. Herz, Tr. of Three R Trusts*, 672 S.W.3d 842, 847 (Tex. App.—Houston [14th Dist.] 2023, no pet.) (disapproving *Conte* and concluding beneficiary's declaratory judgment action against trustee seeking to invalidate supplement to trust was proceeding under trust code when § 115.001 applied and plaintiff invoked § 115.002 in original petition).

In reaching this conclusion, we necessarily reject Orca's "law of the case" argument that we must follow the Thirteenth Court of Appeals' mandamus decision in Orca's DeWitt County lawsuit. *See In re J.P. Morgan Chase Bank, N.A.*, 361 S.W.3d 703, 704 (Tex. App.—Corpus Christi–Edinburg 2011, orig. proceeding) (denying JPMorgan's petition for writ of mandamus seeking to transfer suit pursuant to trust code venue provision). The law of the case doctrine is that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages. *Cricket Commc'ns, Inc. v. Trillium Indus., Inc.*, 235 S.W.3d 298, 306 (Tex. App.—Dallas 2007, no pet.). This lawsuit is not a subsequent stage of the DeWitt County lawsuit, which was dismissed by Orca, so the "law of the case simply is not relevant." *See id.*; *see also NRG Expl., Inc. v. Rauch*, 905 S.W.2d 405, 409 (Tex. App.—Austin 1995, writ denied) ("Because the instant case involves a different lawsuit from the one on appeal in *Rauch I*, the law of the case doctrine does not apply."). Orca directs us to no authorities applying the law of the case under such circumstances. It cites *Gonzalez v. San Jacinto Methodist Hosp.*, 905 S.W.2d 416, 420 (Tex. App.—El Paso 1995), *rev'd on other grounds*, 922 S.W.2d 928 (Tex. 1996), but in that case, the trial court severed a lawsuit after one defendant obtained a summary judgment; the appellate decision on the severed portion of the case became the law of the case; and the court of appeals in the second appeal applied certain legal conclusions reached in the first appellate decision. We conclude *Gonzalez* is inapposite.

–20–

We also find Corpus Christi's *J.P. Morgan Chase Bank* case unpersuasive on the merits and decline to follow its reasoning. There, Orca filed suit in DeWitt County against JPMorgan on the same facts alleged here but, instead of the trust code venue provision, relied on civil practice and remedies code § 15.011 (generally providing that a suit involving a land dispute must be filed in the county where all or part of the land is located) for venue. *See* 361 S.W.3d at 705. JPMorgan sought to transfer venue pursuant to § 115.002, and the trial court denied its motion to transfer venue. *Id.* The court of appeals agreed with the trial court because, it stated, Orca's causes of action "are not enumerated in section 115.001(a), and they do not fall within its scope." *Id.* at 706. The court stated, "All of the actions enumerated in section 115.001(a) involve actions relating to the trust itself or the operation thereof, and none involves anything resembling a tort action." *Id.* The court of appeals relied on cases applying the former version of § 115.001. *See In re Guardianship of Gibbs*, 253 S.W.3d 866, 871 (Tex. App.—Fort Worth 2008, pet. dism'd) (op. on reh'g) (applying former version of § 115.001(a), which included an exclusive list of actions "concerning trusts" over which district court had jurisdiction under the trust code); *Mobil Oil Corp. v. Shores*, 128 S.W.3d 718, 724 (Tex. App.—Fort Worth 2004, no pet.) (same). And the court rejected JPMorgan's argument that the 2007 amendments described above changed the outcome of the case and concluded that § 115.001 was inapplicable because the suit did not involve an action relating to the trust itself or the operation of a trust. *Id.* at 706–07.

–21–

We cannot agree with that conclusion. The legislature amended § 115.001 not only to add subsection (a-1) clarifying that subsection (a)'s list of applicable proceedings is not exhaustive, but it amended subsection (a) to state that "a district court has original and exclusive jurisdiction over *all proceedings by or against a trustee* and all proceedings concerning trusts . . . ." TEX. PROP. CODE § 115.001(a) (emphasis added). Thus, a suit need not "concern a trust" for § 115.001 to apply if it is a proceeding against a trustee as trustee, as here. *See In re J.P. Morgan Chase Bank, N.A.*, 373 S.W.3d at 614 (declining to follow the Corpus Christi court because it failed to "acknowledge that subsection (a) was also amended to include suits by or against a trustee").

Finally, Orca contends the attorney's fees awarded by the trial court were inequitable. *See* TEX. PROP. CODE § 114.064 ("the court may make such award of costs and reasonable and necessary attorney's fees as may seem equitable and just"). Whether fees are equitable and just is a question of law to be decided by the trial court and its "determination is not susceptible to direct proof but is rather a matter of fairness in light of all the circumstances." *Ridge Oil Co., Inc. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 162 (Tex. 2004). Matters of equity are addressed to the trial court's discretion, so "we review the trial court's decision to award these fees—in terms of the equities involved—for an abuse of discretion." *Canadian Real Est. Holdings, LP v. Karen F. Newton Revocable Tr.*, No. 05-20-00747-CV, 2022 WL 4545572, at *6 (Tex. App.—Dallas Sept. 29, 2022) (mem. op.); *see also Hachar v. Hachar*, 153

–22–

S.W.3d 138, 142 (Tex. App.—San Antonio 2004, no pet.) (stating granting fees to trustee under § 114.064 is within the sound discretion of the trial court and abuse of discretion standard of review applies).

As noted above, the parties stipulated to the facts as discussed in the supreme court's opinion in the un-severed portion of the case. The supreme court stated:

> Phillip Mettham, an employee of JPMorgan, was responsible for leasing the trust's Eagle Ford interests.
>
> In 2010, Mettham leased fifteen of the trust's Eagle Ford tracts in DeWitt and Gonzales counties to GeoSouthern Energy Corporation. Comprising more than 1,800 acres, the GeoSouthern deal was one of the largest Mettham negotiated for the trust. Notably, GeoSouthern did not record its leases in the counties' property records until six months after closing the deal.
>
> Also in 2010, Lawrence Berry, an experienced oil-and-gas businessman, formed Orca Assets, G.P., L.L.C. The specific purpose of establishing Orca was to acquire promising unleased acreage in the Eagle Ford Shale. And it quickly set its sights on the trust's holdings in Karnes and DeWitt counties. Orca's team included Berry; its vice president, John Ellis; landmen Tony Villalon and Joan Stewart, and a collection of additional landmen. All were experienced in leasing oil-and-gas properties.
>
> On November 11, 2010, Mettham met with Ellis and Stewart to discuss Orca leasing some of the trust's tracts. Berry also attended part but not all of the meeting. Orca's team brought maps showing the tracts it desired to lease. Ellis asked Mettham whether the indicated acreage "was open and not leased." Each of Orca's representatives at the meeting remembered Mettham's reply somewhat differently. Ellis believes Mettham answered, "[Y]es, but I'll have to—I'll have to check." Stewart remembers him saying, "I'm not sure of that. I'll have to check." Berry recalls Mettham unequivocally representing that the acreage was "open," meaning unleased. However, Berry also concedes that he was in the meeting for only a brief time.

–23–

The trust requires that all leases of its tracts contain a clause negating any warranty of title. The standard lease form that JPMorgan usually uses when dealing with the trust's properties includes such a clause: "This Lease is made without warranties of any kind, either express or implied." Orca was familiar with that language as it had twice before leased acreage from the trust using the standard lease form.

But shortly after the parties' initial meeting, Mettham notified Orca that any lease deal it made with the trust would not employ the standard negation-of-warranty provision. Instead, JPMorgan would require new language expressly shifting the risk of title failure to the lessee. Mettham explained that the high volume of leasing activity in the region necessitated the change because lessees were quickly pursuing opportunities without thoroughly examining title.

The new clause would read:

"Negation of Warranty. This lease is made without warranties of any kind, either express or implied, and without recourse against Lessor in the event of a failure of title, not even for the return of the bonus consideration paid for the granting of the lease or for any rental, royalty, shut-in payment, or any other payment now or hereafter made by Lessee to Lessor under the terms of this lease."

Mettham's request to include this new lengthier clause incited concerns among Orca's team. To Ellis, the provision "raised a red flag." It was a "curveball"—something he had never "seen before in any lease." Because the new warranty provision gave the lessee the responsibility "to make absolutely sure that [the t]rust owned the minerals," Ellis believed Orca should obtain "a solid outside legal opinion" as to title. And when asked if Orca would rely on JPMorgan "to confirm whether or not it had title to these mineral interests," Ellis responded: "We would never—that I would never look to JPMorgan to tell me whether or not [the t]rust owned the minerals that were in question."

Similarly, Villalon, Orca's landman and a former practicing attorney, conceded that without a warranty, Orca could purchase only "whatever it was that the Red Crest Trust had to sell," which "might be nothing at all." He also acknowledged that if the trust's properties had already been leased, it could not convey those minerals to Orca. In general, he did not find a disclaimer of warranty out of the ordinary. But he

regarded the wording of this particular provision as unusually explicit. So he advised Ellis: "I think we need to accept the language, but we also need to give the title another review before we close."

On December 6, the parties signed a letter of intent acknowledging the trust's agreement to lease the tracts to Orca. In the letter, neither the trust nor JPMorgan made any representation about the trust's title or whether the acreage was available to lease. Instead, the letter provided that Orca had "caused a search to be made of the records of Karnes and DeWitt [c]ounties and has preliminarily determined that Red Crest Trust is the owner and holder of the mineral estate underlying" the tracts at issue.

The letter also quoted the new negation-of-warranty clause on which the parties had agreed. And the letter noted that Orca had requested and received a thirty-day option period in exchange for accepting the new language:

"ORCA has accepted the counteroffer of RED CREST TRUST proposing to modify paragraph 18[,] ... but, in light of such requested modification to the lease form[, Orca] has requested, and RED CREST TRUST has agreed to, a delay of up to 30 calendar days in the closing of the proposed transaction to allow ORCA the opportunity to re-examine its title work upon which its determination of ownership is based ...."

The letter further provided that the parties could close the transaction "on a piecemeal basis" over the thirty-day option period. As "the title to the individual tracts is examined and approved," the trust would execute a lease to that tract upon Orca tendering consideration of $3,500 per acre. And if Orca's "re-examination of title should reveal [previously unknown] information ... that brings into question the ownership" of one or more of the tracts, then Orca "may, in its sole and absolute discretion, elect to not take a lease on such tract or tracts." Finally, the letter precluded the trust or JPMorgan from leasing the tracts or granting an option to acquire a lease to any third parties.

Before signing the letter of intent, Orca had been checking the property records on an almost daily basis. But it did not continue to do so during the thirty-day option period. And it was just three days into the option period, on December 9, that GeoSouthern finally recorded the leases it

had obtained from the trust six months earlier. The tracts the letter of intent covered included much of the acreage GeoSouthern had already leased. Any title search Orca had commissioned after December 9—a search that one of Orca's landmen estimated would have cost between $600 and $800—would have revealed GeoSouthern's leases.

Orca contends it conducted no searches after signing the letter of intent because (1) its earlier searches had revealed no title issues, (2) Mettham had represented that the acreage was unleased, and (3) the letter precluded JPMorgan from leasing any of the tracts during the option period. The purpose of the thirty days, Orca argues, was to re-evaluate the title review it had already performed. Orca feared defects in title going backward in time, not forward.

Ultimately, Orca decided to move forward on just the tracts in DeWitt County—919 of the 1,680 acres covered in the letter of intent. On January 5, 2011, Orca sent Mettham six leases covering those tracts. Each lease contained the new negation-of-warranty language providing that it was "without warranties" and "without recourse" for failure of title. Six days later, Orca sent Stewart to close the deal. As Stewart handed Mettham bonus checks amounting to $3,217,585, she asked him again if he was "sure these are all open." A colleague attending the closing with Stewart interjected: "Well, they better be for that kind of money."

Mettham allegedly responded to Stewart by saying, "[L]et me check." Then, after he "looked at something below his desk," as well as "at his computer" and the maps Orca had provided, he said, "We're good to go. They're open." Orca recorded the leases in the DeWitt County property records the next day.

Two weeks later, GeoSouthern contacted Mettham. It had discovered Orca's leases in the property records—leases of acreage GeoSouthern had already leased. Mettham immediately informed Orca of the title defect. And on February 18, JPMorgan sent Orca a check refunding the $3.2 million in bonus payments, though it maintained it was not obligated to do so under the leases' negation-of-warranty provisions. But Orca rejected the tender. And on February 24, it sued JPMorgan and Mettham for $400,000,000 in lost profits.

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 650–52 (Tex. 2018).

The parties also stipulated that after the supreme court rendered judgment for JPMorgan, the bank distributed—except for a $195,000 lease commission for JPMorgan—the $3.2 million in bonus payments to the trust beneficiaries as income under the trust agreement. The parties presented additional evidence, some of which was duplicative of the above recitation from the supreme court and we will therefore not reproduce it here. A portion of the deposition testimony of Orca vice president John Ellis was admitted into evidence. Ellis testified Orca acquired the services of outside counsel to make sure the trust owned the minerals Orca was leasing, and he said they depended on their landman who came highly recommended. Ellis said the landman had done title work prior to the November 2010 meeting. He said he understood the negation-of-warranty provision in the lease to mean that if Orca paid the bonus money and there was a failure of title, JPMorgan would not have to return the bonus money. Ellis said he had seen such provisions before in other leases. He said it was important for Orca to verify the trust owned the minerals before they finalized the lease and paid the bonus money and that Orca had the responsibility to do so—he "would never look to JPMorgan to tell me whether or not Red Crest Trust owned the minerals" in question.

Portions of the testimony of Orca's landman, Jose Villalon, were also admitted. Villolon testified he previously worked as a title attorney. He said he did

not rely on information obtained from the owner of mineral interests but relied on "what was in the records." He said it would not be prudent to only rely on information obtained from the owner, including information as to whether mineral interests were subject to another lease, and he did not rely on any representations from JPMorgan in this case. Villalon said the responsibility to ensure the mineral interests were open and available for lease rested with himself and the landmen, and Orca relied upon them to do so.

Orca read portions of Mettham's deposition for the trial court. He testified he made a presentation for the Red Crest Trust beneficiaries on November 11, 2010, and his presentation included a reference to a lease to GeoSouthern covering mineral interests in DeWitt and Gonzales counties, amongst about a dozen pages listing other leases. He said he met with Orca the next day. When questioned how he could forget about the GeoSouthern lease a day later, Mettham responded, "I did forget. This was not on my radar." Mettham stated he was instructed to confirm the Orca lease mineral interests were not subject to any other agreements that would prohibit the deal with Orca; he said he checked "the last time we leased in DeWitt County" but he denied he discovered he had previously leased the acres in question to GeoSouthern. While he said he found the GeoSouthern lease, he did not look at the legal description of the property nor compare it to the acres Orca was interested in. Mettham stated he assumed the GeoSouthern lease "had been of record" and thus the Orca lease did not cover the same acres. Mettham first became aware the Orca

lease covered the same property as the GeoSouthern lease when GeoSouthern brought it to his attention less than a month after making the Orca lease.

Sherri Anderson stated during her deposition she worked in oil and gas mineral management for JPMorgan. She said it would be unacceptable for her to execute a lease knowing the acreage had already been leased to another entity. Anderson stated she would compare the legal descriptions in leases in her files to the legal description of properties a potential lessee was interested in to ensure the properties were not already subject to a lease.

Joe Velasquez stated in his deposition he was a trust officer with JPMorgan and he had attended Mettham's November 2010 presentation to the Red Crest Trust beneficiaries. Velasquez stated he did not recall there being a great deal of conversation regarding any specific lease, but Orca admitted beneficiaries' handouts from the meeting with notations suggesting individual leases were discussed.

In sum, Orca argues the fees awarded to JPMorgan are inequitable because Mettham either knew the acres in question had already been leased or was grossly negligent in failing to check they were not, and as a result of his misrepresentations, JPMorgan received $3.2 million from Orca for the leases. Given that, asking to be reimbursed for $2.4 million in attorney's fees is inequitable "when it made $3,200,000 million in exchange for leases" JPMorgan could not lease "despite JPMorgan's misrepresentations to the contrary."

We conclude Orca has not demonstrated the trial court abused its discretion in awarding JPMorgan attorney's fees under § 114.064. First, we observe that the supreme court concluded the facts here precluded as a matter of law Orca's claim of justifiable reliance on JPMorgan's representations. *Orca Assets*, 546 S.W.3d at 660. Throughout the transaction, "Orca encountered 'red flags' that should have alerted it to the danger of blindly relying on JPMorgan's representations regarding title to the tracts." *Id.* at 658. These red flags included Mettham's equivocal statements at the November 2010 meeting; Stewart's own apparent doubts at closing, causing her to question again whether the properties were open; the absence of any assurance of clear title in the letter of intent; and the non-standard negation-of-warranty clause. *Id.* at 656–57. Further, Orca stopped checking the county property records once the letter of intent was signed. *Id.* at 658. The supreme court also stated that "another alarm Orca disregarded was the negation-of-warranty provision's direct contradiction of the representation upon which Orca claims to have relied." *Id.* There was a direct contradiction between the two because Mettham's statement that the acreage was open essentially meant the trust had not leased the property and had good title, and the negation-of-warranty clause "spoke to Orca's lack of recourse 'for failure of title.'" *Id.* at 659. Thus, "[v]iewed in context with the numerous 'red flags,' Orca's sophistication in the oil-and-gas industry, and the direct contradiction between the representation and the letter of intent, Orca cannot maintain its claim of justifiable reliance." *Id.* at 660 (footnote omitted).

–30–

Second, it is undisputed that, after discovering the acreage in question had already been leased to GeoSouthern, JPMorgan sent Orca a refund check for the entire bonus payment amount of $3.2 million. Only after Orca rejected the refund and after the supreme court reinstated the trial court's judgment, did JPMorgan distribute the full amount, less a lease commission, to the trust beneficiaries. Given this, we reject Orca's contention that JPMorgan has "unclean hands" and thus cannot receive an equitable award of attorney's fees.

We also find distinguishable the authorities relied on by Orca. For instance, in *Goughnour v. Patterson, Tr. of Deborah Patterson Howard Tr.*, No. 12-17-00234-CV, 2019 WL 1031575, at *16–17 (Tex. App.—Tyler Mar. 5, 2019, pet. denied) (mem. op.), the court of appeals found inequitable the trial court's ordering a trust beneficiary to pay the trustee's attorney's fees when evidence showed the trustee repeatedly engaged in self-dealing, "engaged in very risky activities and lost a substantial amount of Trust money," and "was not cleared of any wrongdoing by a review of the merits." We do not have anything like those facts here. At best for Orca, it could be said reasonable minds could differ as to the equities involved here, which is not enough for an abuse of discretion. *See Austin Jockey Club, Ltd. v. Dallas City Limits Prop. Co., L.P.*, No. 05-14-00114-CV, 2015 WL 3549645, at *8 (Tex. App.—Dallas June 5, 2015, pet. denied) (mem. op.). We overrule Orca's final issue.

## Conclusion

Having overruled Orca's issues, we affirm the judgment of the trial court.

220292f.p05

/Ken Molberg/

KEN MOLBERG
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ORCA ASSETS, G.P., L.L.C.,
Appellant

No. 05-22-00292-CV        V.

JP MORGAN CHASE BANK, N.A.,
JP MORGAN CHASE BANK, N.A.,
AS TRUSTEE OF THE RED
CREST TRUST, Appellee

On Appeal from the 44th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-13-13886.
Opinion delivered by Justice
Molberg. Justices Carlyle and Smith
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee JP MORGAN CHASE BANK, N.A., JP MORGAN CHASE BANK, N.A., AS TRUSTEE OF THE RED CREST TRUST, recover its costs of this appeal from appellant ORCA ASSETS, G.P., L.L.C.

Judgment entered this 19th day of March, 2024.